**THIS DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED ON AN INTERIM BASIS, BUT HAS NOT BEEN FINALLY APPROVED, BY THE UNITED STATES BANKRUPTCY COURT.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Derek J. Baker, Esquire (1998001688)
Brian M. Schenker, Esquire (014582008)
Lauren S. Zabel, Esquire (012132010)
REED SMITH LLP
506 Carnegie Center, Suite 300
Princeton, New Jersey 08540
Telephone:  609-987-0050
Fax:  609-951-0824
dbaker@reedsmith.com
bschenker@reedsmith.com
lzabel@reedsmith.com

*Counsel for BEB Bergen Ave, LLC*

| | |
|---|---|
| ~~UNITED STATES BANKRUPTCY COURT~~ <br><br> ~~DISTRICT OF NEW JERSEY~~ <br><br> ~~Caption in Compliance with D.N.J. LBR 9004-2(c)~~ | |
| In re: <br><br> SUPOR PROPERTIES BERGEN AVENUE <br><br> , LLC <br><br><br> Debtor | Chapter 11 <br><br> Case No. 23-15758-SLM <br><br> ~~FIRST AMENED DISCLOSURE STATEMENT IN SUPPORT OF PROPOSED FIRST AMENDED PLAN OF LIQUIDATION~~ |

~~FIRST~~SECOND **AMENDED DISCLOSURE STATEMENT IN SUPPORT OF PROPOSED** ~~FIRST~~SECOND **AMENDED PLAN OF LIQUIDATION (Dated** ~~December 7~~January 18**,** ~~2023~~2024**)**

**PRELIMINARY STATEMENT**

BEB Bergen Ave, LLC, a New York limited liability company, the secured creditor in the above-captioned and numbered case and proponent of that certain proposed ~~First~~Second

Amended Plan of Liquidation (Dated ~~December 7~~January 18, ~~2023~~2024) (the "Plan") pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq* (in such capacity, the "Plan Proponent"), offers this ~~First~~Second Amended Disclosure Statement in support of the Plan (this "Disclosure Statement").

This Disclosure Statement provides information concerning Supor Properties Bergen Avenue LLC, a Delaware limited liability company, the debtor and the debtor-in-possession in the above-captioned and numbered case, and it includes a summary of such entity's assets and liabilities, a summary of what the holders of allowed claims against, and equity interests in, such entity will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures necessary for confirmation (approval) of the Plan. This Disclosure Statement has been approved by the bankruptcy court on an interim basis as containing adequate information to enable parties-in-interest to make an informed judgment on whether to accept or reject the Plan.

The Plan Proponent believes that the Plan presents the most advantageous outcome for all of the debtor's stakeholders under the circumstances of this bankruptcy case and that, therefore, confirmation of the Plan is in the best interests of the debtor's bankruptcy estate. The Plan should be read in conjunction with this Disclosure Statement. No other statement or representation as to assets, liabilities, or financial affairs is authorized that is not contained in this Disclosure Statement or the Plan.

The Plan Proponent has asked the bankruptcy court to confirm the Plan and to do so, if applicable, in accordance with the provisions of § 1129(b) of Title 11 of the United States Code. Once confirmed, the provisions of the Plan will legally bind the debtor, the debtor-in-possession, creditors, holders of equity interests in the debtor, and other parties-in-interest regardless of whether such persons and entities have filed claims or have accepted or rejected the Plan. Parties-in-interest should thoroughly review this Disclosure Statement and the Plan before determining whether to accept or reject the Plan.

Capitalized terms are defined in Article III, below.  Capitalized terms in this Disclosure Statement which are not otherwise defined herein shall have the definition and meaning ascribed to them in Article I of the Plan.

### ARTICLE I
### INTRODUCTORY MATTERS AND HOW TO VOTE

A.    <u>Plan Background</u>

On the Petition Date, which was July 5, 2023, Supor Properties Bergen Avenue LLC, a Delaware limited liability company, commenced the within case under chapter 11 of the Bankruptcy Code. The case is being administered in the Bankruptcy Court before the Honorable Stacey L. Meisel.

This Disclosure Statement contains information with respect to the Plan Proponent's proposed plan of liquidation.  A copy of the Plan is attached hereto as Exhibit "A."  Chapter 11 of the Bankruptcy Code allows an interested party to sponsor a plan that proposes how to dispose of a debtor's assets and treat claims against, and interests in, such debtor.  A chapter 11 plan may provide for a debtor-in-possession to reorganize by continuing to operate, to liquidate by selling assets of the estate, or to implement a combination of both.  The Plan is a liquidating plan.

The Bankruptcy Code requires that the party proposing a chapter 11 plan prepare and file with the Bankruptcy Court a document called a "disclosure statement."  Pursuant to § 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you for the purpose of enabling you to make an informed judgment about the Plan. The Plan Proponent has examined various alternatives and, based on information contained in this Disclosure Statement, and for the reasons set forth below, has concluded that the Plan provides the best recovery to Creditors.

The Disclosure Statement describes the Plan and contains information concerning, among other matters: (i) the history, business, results of operations, management, properties, and liabilities of the Debtor; (ii) the proposed liquidation of Property of the Estate to pay Allowed Claims pursuant to the terms, conditions, and provisions of the Plan, and (iii) the proposed Distribution to Creditors holding Allowed Claims against the Estate.  The Plan Proponent

requests that you carefully review the contents of this Disclosure Statement and the Plan (including, without limitation, all exhibits hereto and thereto) before making a decision to accept or reject the Plan. Particular attention should be paid to the provisions affecting or impairing your rights as a Creditor or a holder of Equity Interests in the Debtor.

Your vote on the Plan is important.  For the Plan to be accepted by a Class of Claims, the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Allowed Claims in such Class who vote on the Plan must vote to accept the Plan. For the Plan to be accepted by a Class of holders of Equity Interests in the Debtor, the holders of at least two-thirds (2/3) in amount of the Equity Interests in the Debtor in such Class who vote on the Plan must vote to accept the Plan.

Non-acceptance of the Plan may lead to relief from the automatic stay under § 362 of the Bankruptcy Code being granted to the Secured Creditor, dismissal of the Case, or conversion of this Case to a case under Chapter 7 of the Bankruptcy Code and a liquidation pursuant to Chapter 7 of the Bankruptcy Code, or an alternative plan.  These alternatives may not provide for a distribution of as much value to holders of Allowed Claims as the Plan will.  Accordingly, the Plan Proponent urges you to accept the Plan by completing and returning the enclosed ballot by no later than January 9, 2024, at 5:00 p.m. (prevailing Eastern Time).

    B.    <u>Information Regarding the Plan</u>

    1.    <u>Plan is the Governing Document</u>

Although the Plan Proponent believes that this Disclosure Statement accurately describes the Plan, all summaries of the Plan contained in this Disclosure Statement are qualified by the Plan itself and the documents described therein, which shall be controlling.  You are urged to read the Plan and not only this Disclosure Statement.

    2.    <u>Sources of Information</u>

Factual information contained in this Disclosure Statement has been obtained by the Plan Proponent from the Debtor in filings made by the Debtor with the Bankruptcy Court, and in discovery conducted by the Plan Proponent, during the pendency of this Case.  Neither the Plan

Proponent, nor any of its directors, officers, employees, attorneys, or agents, makes any representation or warranty regarding that factual information.  Without limiting the generality of the foregoing, neither the Plan Proponent, nor any of its directors, officers, employees, attorneys, or agents, represent or warrant that the factual information contained in this Disclosure Statement is free from any inaccuracy.  The Plan Proponent has, however, attempted to present factual information accurately and fairly, and the Plan Proponent believes that such factual information is substantially accurate.  The assumptions underlying the projections contained in this Disclosure Statement concerning the sources and amounts of payments to Creditors and holders of Equity Interests in the Debtor represent the Plan Proponent's best estimate as to what the Plan Proponent expects will happen.  Because they are only assumptions about or predictions of future events, many of which are beyond the Plan Proponent's control, there can be no assurances that the assumptions will in fact materialize or that the projected realizations will in fact be met. Except as otherwise provided herein, this Disclosure Statement will not reflect any events that occurred after the hearing before the Bankruptcy Court to determine the adequacy of this Disclosure Statement.

3.    <u>Bankruptcy Court Approval</u>

Following a hearing held on December 5, 2023, the Bankruptcy Court approved this Disclosure Statement on an interim basis as containing information of a kind and in sufficient detail adequate to enable a hypothetical, reasonable investor to make an informed judgment about the Plan.  The Bankruptcy Court will hold a hearing to consider the final approval of this Disclosure Statement and confirmation of the Plan on January 23, 2024.  Under § 1125 of the Bankruptcy Code, this approval enabled the Plan Proponent to send you this Disclosure Statement and solicit your acceptance of the Plan.  The Bankruptcy Court has not, however, approved the Plan itself, nor conducted a detailed investigation into the contents of this Disclosure Statement.

C.    <u>Voting Instructions</u>

1.    <u>How to Vote</u>

A ballot is enclosed herewith for Creditors and holders of Equity Interests in the Debtor entitled to vote to accept or reject the Plan.  To vote on the Plan, indicate on the enclosed ballot that you accept or you reject the Plan and sign your name and mail the ballot in the envelope provided for this purpose.

To be counted, ballots must be completed, signed, and returned so that they are received no later than **January 9, 2024, at 5:00 p.m. (prevailing Eastern Time)** at the following address:

> Supor Properties Ballot Processing
> REED SMITH LLP
> 506 Carnegie Center, Suite 300
> Princeton, New Jersey 08540
> Attn: Derek J. Baker, Esquire

Do not send your ballot via facsimile or e-mail.  If your ballot is not properly completed, signed and returned as described, it will not be counted.  If your ballot is damaged or lost, you may request a replacement by sending a written request to the above address.

2.    <u>Who May Vote</u>

The Plan divides the Claims of Creditors into four (4) Classes.  There is also one Class of holders of Equity Interests in the Debtor.  The Classes are as follows: Class 1 (Secured Claim of Governmental Unit), Class 2 (Secured Claim of Secured Creditor), Class 3 (General Unsecured Claims), Class 4 (Insider Claims), and Class 5 (Equity Interests).

Classes of Creditors and holders of Equity Interests in the Debtor that are impaired by the Plan are entitled to vote, unless no compensation or payment is provided for such Class in which event such Class is conclusively deemed to have rejected the Plan.  Each holder of an Allowed Claim or an Equity Interest in the Debtor in an Impaired Class that will receive Distributions under the Plan on account of such Allowed Claims or such Equity Interests may vote to accept or reject the Plan.  A Class is impaired if the legal, equitable, or contractual rights attaching to the Claims or Equity Interests of the Class are modified, other than by curing defaults and reinstating maturities.

Class 1 is an Unimpaired Class under the Plan and deemed to have accepted the Plan. Classes 2, 3, 4, and 5 are Impaired Classes under the Plan and are entitled to vote on the Plan.

In determining acceptances of the Plan, the vote of a Creditor will only be counted if submitted by a Creditor whose Claim is an Allowed Claim as defined by the Plan.  Generally speaking, a Creditor holds an Allowed Claim if (a) a proof of Claim was timely filed as of the Bar Date or the Rejection Claim Bar Date, as applicable, or tardily filed as to which neither the Debtor in Possession, nor the Secured Creditor, nor any another party in interest has objected, but only if such Claim is not a Disputed Claim, (b) the Claim appears in the Schedules and has not already been paid, but only if such Claim is not a Disputed Claim or superseded by a subsequent corresponding filed proof of Claim, pursuant to Bankruptcy Rule 3003(c)(4), or (c) the Claim has been allowed, but only to the extent allowed by (i) a Final Order, (ii) under the Plan, or (iii) under any agreements entered into on or prior to the Effective Date (and approved by the Bankruptcy Court) or in connection with the Plan (and approved in accordance with the terms of the Plan) establishing the amount and nature of the Claim.

D.    Confirmation

"Confirmation" is the technical phrase for the Bankruptcy Court's approval of a plan of liquidation.  At the Confirmation hearing, in order to confirm the Plan, the Plan Proponent must demonstrate that it has met the requirements of § 1129 of the Bankruptcy Code.  If the Bankruptcy Court determines that all of the requirements of § 1129 have been satisfied, the Bankruptcy Court will enter an order confirming the Plan.  The Plan Proponent believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code for confirmation of the Plan.

Voting is tabulated by Class.  As discussed above, for the Plan to be accepted by a Class of Claims, the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Allowed Claims in such Class who vote on the Plan must vote to accept the Plan; and for the Plan to be accepted by a Class of holders of Equity Interests in the Debtor, the holders of

at least two-thirds (2/3) in amount of the Equity Interests in the Debtor in such Class who vote on the Plan must vote to accept the Plan.

Even if a Class votes against the Plan, the Plan may nevertheless be confirmed by the Bankruptcy Court, notwithstanding the rejection of the Plan by such Class, so long as certain statutory requirements are met by the Plan. This procedure is called a "cram down." The Plan Proponent will request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code if any Class rejects the Plan.

The Bankruptcy Court has set January 23, 2024 as the hearing date to determine whether the Plan has been accepted by the requisite number of Creditors and holders of Equity Interests in the Debtor and whether the other requirements for Confirmation of the Plan have been satisfied. The hearing on Confirmation will be held at the United States Bankruptcy Court, District of New Jersey (Newark), 50 Walnut Street, 3rd Floor, Courtroom #3A, Newark, New Jersey 07102. This hearing may be continued from time to time and day to day without further notice. If the Bankruptcy Court confirms the Plan, it will enter the Confirmation Order. Any objections to Confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on the parties set forth below on or before the date set forth in the Notice of Confirmation Hearing sent to you with this Disclosure Statement and the Plan. Objections must be served upon:

> Derek J. Baker, Esquire (1998001688)
> Brian M. Schenker, Esquire (014582008)
> Lauren S. Zabel, Esquire (012132010)
> REED SMITH LLP
> 506 Carnegie Center, Suite 300
> Princeton, New Jersey 08540
> Telephone: 609-987-0050
> Fax: 609-951-0824
> dbaker@reedsmith.com
> bschenker@reedsmith.com
> lzabel@reedsmith.com
>
> and
>
> Peter J. D'Auria
> US Dept of Justice
> Office of the US Trustee

One Newark Center Ste 2100
Newark, NJ 07102
Peter.J.D'Auria@usdoj.gov

E.      Disclaimers

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION WHICH MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPONENT'S PROPOSED PLAN. PLEASE READ THIS DOCUMENT WITH CARE. THE PURPOSE OF THIS DISCLOSURE STATEMENT IS TO PROVIDE "ADEQUATE INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTOR AND THE CONDITION OF THE DEBTOR'S BOOKS, RECORDS, AND DISCLOSED FACTUAL INFORMATION, THAT WOULD ENABLE A HYPOTHETICAL REASONABLE INVESTOR TYPICAL OF HOLDERS OF CLAIMS OR EQUITY INTERESTS OF THE RELEVANT CLASS TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN. SEE 11 U.S.C. § 1125(a). FOR THE CONVENIENCE OF CREDITORS AND HOLDERS OF EQUITY INTERESTS IN THE DEBTOR, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES ANY SUMMARY. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN WILL CONTROL.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE (IN CONJUNCTION WITH A REVIEW OF THE PLAN) WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE

STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED THEREBY.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE PLAN PROPONENT HAS NO DUTY TO UPDATE THIS DISCLOSURE STATEMENT UNLESS OTHERWISE ORDERED TO DO SO BY THE BANKRUPTCY COURT. CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY THEIR NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "BELIEVE," "ANTICIPATE," "ESTIMATE", OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE, AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

**ARTICLE II**
**HISTORY OF THE DEBTOR, ITS OPERATIONS, AND THE CASE**

The Case was commenced on July 5, 2023 and was precipitated by a sheriff's sale (a foreclosure sale) of the Debtor's real property commonly known as 433 Bergen Avenue, Kearny, New Jersey (*i.e.* Bergen Avenue) that was scheduled for the day immediately following the Petition Date. The filing of the Case stayed such sale.

The Debtor owns a single asset – an industrial property referred to herein as Bergen Avenue. Bergen Avenue is purportedly Leased by the Debtor to affiliates of, and Third Parties that have relationships with, the direct and indirect holders of Equity Interests in the Debtor. Such purported Tenants have failed to pay any rent to the Debtor in well over one year and certain of them have failed to commence a single payment of any rent to the Debtor. Notwithstanding such failures, the Debtor has taken no action to evict such affiliated and otherwise related Tenants from Bergen Avenue and re-Lease Bergen Avenue to paying tenants or sell Bergen Avenue to a Third Party. Instead, the Debtor has made numerous failed attempts to refinance Bergen Avenue, while such non-paying affiliated and otherwise related Tenants remain in possession of Bergen Avenue under their purported Leases.

Bergen Avenue is encumbered by valid, perfected, and enforceable liens and security interests securing Claims of: (a) Hudson County, New Jersey for unpaid real property taxes assessed against Bergen Avenue; and (b) the Secured Creditor, BEB Bergen Ave, LLC, a New York limited liability company, as assignee of BEB Credit Group II, LLC, a New York limited liability company, whose Secured Claim is in excess of $18.2 million as of the Petition Date. The Plan Proponent estimates that Bergen Avenue will be worth more than such Secured Claims in a marketed, transfer tax free sale to a Third Party, if the purported Leases of such non-paying affiliated and otherwise related Tenants are rejected and terminated and such non-paying affiliated and otherwise related Tenants are no longer in possession of Bergen Avenue. Such a sale would allow for a Distribution to any Creditors holding Allowed Unsecured Claims and, thereafter, to holders of Equity Interests in the Debtor. On December 22, 2023, the Chapter 11 Trustee received a letter of intent from a potential third-party buyer of Bergen Avenue, expressing an interest to buy Bergen Avenue, if vacant of all Tenants, for $26 million.

For further particulars regarding the ~~assets and~~ liabilities of the Estate, reference is made to the Schedules filed on July 7, 2023 (Docket No. 8), copies of which are available upon request.

Since commencing this Case over five (5) months ago, the Debtor has failed to advance the Case.  On or about July 20, 2023 (Docket Nos. 15, 17, 29, 32), the Debtor filed an application to retain counsel, which was granted by the Bankruptcy Court on August 2, 2023 (Docket No. 24); however, such counsel moved to withdraw from its representation of the Debtor on October 31, 2023 (Docket No. 55).  On September 5, 2023 (Docket No. 28), the Debtor filed an application to retain an accountant, which was granted by the Bankruptcy Court on September 15, 2023 (Docket No. 33).  No other motions or applications were filed by the Debtor during the over five (5) month pendency of the Case.

Indeed, the docket for the Case reflects numerous motions by the Secured Creditor to compel discovery from the Debtor and the non-paying affiliated and otherwise related Tenants remaining in possession of Bergen Avenue, followed by orders of the Bankruptcy Court granting such motions.

On November 3, 2023, the Secured Creditor filed a Motion for the Appointment of a Chapter 11 Trustee due to, among other things, the Debtor's failure to adequately prosecute the Case.  (Docket No. 60).  At a hearing held on November 14, 2023, the Bankruptcy Court entered an order directing the United States Trustee to appoint a Chapter 11 Trustee.  (Docket No. 82). Pursuant to notice entered on November 15, 2023, the United States Trustee appointed Andrea Dobin as the Chapter 11 Trustee.  (Docket No. 85).  After an initial investigation, the Chapter 11 Trustee filed her initial investigatory report on December 1, 2023 (Docket No. 106) pursuant to which the Chapter 11 Trustee reported on the scope of her investigation to date and advised of her decision to support the confirmation of the Plan.

On January 9, 2024, an objection was filed by Supor Properties Bergen Avenue LLC and Joseph Supor, III to the Claim of the Secured Creditor, arguing that the amount of the Allowed Secured Claim of the Secured Creditor should be limited to not less than $16,219,161.27.

(Docket No. 132).  Pursuant to the terms, conditions, and provisions of the Secured Creditor Loan Documents, the Claim of the Secured Creditor is a full recourse Claim against the Debtor and recourse is not limited to the Secured Creditor's collateral.  Section 11.24 of the Loan Agreement, dated as of August 4, 2021, between the Debtor and the Secured Party expressly provides that: "The Loan shall be fully recourse to Borrower. Lender shall have the right to enforce the liability and obligation of Borrower against Borrower by money judgment or otherwise, to the extent of any and all losses incurred by Lender (including, without limitation, reasonable attorneys' fees and expenses incurred) including, but not limited to, any unpaid principal and any and all accrued and unpaid Interest and all fees, penalties, or liabilities incurred by Lender arising out of or in connection with the Loan."  Thus, for purposes of voting on the Plan only, the Secured Creditor asserts that the Secured Creditor should be deemed to have an Allowed Secured Claim in the amount of $16,219,161.27 and an Allowed Unsecured Claim in the amount of $2,016,090.64.

**ARTICLE III**
**DEFINITIONS**

Unless otherwise expressly defined herein, capitalized terms shall have the same meaning when used herein as set forth in Article I of the Plan.

**ARTICLE IV**
**DESIGNATION OF CLAIMS AND INTERESTS**

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date.  A plan sets forth the means for satisfying claims against, and interests in, a debtor.  Confirmation of a plan by the Bankruptcy Court makes the plan binding upon the debtor, any issuer of securities under the plan, any person or entity acquiring property under the plan and any creditor of, or equity holder in, the debtor, whether or not such creditor or equity holder (a) is impaired under or has accepted the plan or (b) receives or retains any property under the plan. The Plan provides for the liquidation of the Debtor's assets and distribution to Creditors and holders of Equity Interests in the Debtor.  The

Plan Proponent believes that the Plan provides the best and most prompt possible recovery to holders of Claims and Equity Interests in the Debtor.

A chapter 11 plan may specify that the legal, contractual, and equitable rights of the holders of claims or interests in classes are to remain unaltered by the plan. Such classes are referred to as "unimpaired" and, because of such favorable treatment, are deemed to accept the plan. Accordingly, it is not necessary to solicit votes from the holders of claims or equity interests in such classes. A chapter 11 plan also may specify that certain classes will not receive any distribution of property or retain any claim against a debtor. Such classes are deemed not to accept the plan and, therefore, need not be solicited to vote to accept or reject the plan. Any classes that are receiving a distribution of property under the plan but are not "unimpaired" will be solicited to vote to accept or reject the plan.

Section 1123 of the Bankruptcy Code provides that a plan shall classify the claims of a debtor's creditors and equity interest holders. In compliance therewith, the Plan designates and classifies the Claims against and Equity Interests in the Debtor as set forth below. Except to the extent that the Plan provides otherwise, a Claim or Equity Interest that is properly includable in more than one Class is classified in a particular Class only to the extent that it qualifies within the description of that Class and is placed in a different Class to the extent it qualifies within the description of such different Class. Under section 1122 of the Bankruptcy Code, the Plan must classify Claims and Equity Interests into Classes that contain Claims and Equity Interests that are substantially similar to the other Claims and Equity Interests in such Classes. The Plan Proponent believes that the Plan has classified all Claims and Equity Interests in compliance with the provisions of section 1122 of the Bankruptcy Code.

**Class 1—Secured Claim of Governmental Unit**

Class 1 consists of the Secured Claim of Hudson County, New Jersey for unpaid real property taxes assessed against Bergen Avenue. The Secured Claim in Class 1 shall be an Allowed Secured Claim.

**Class 2—Secured Claim of Secured Creditor**

Class 2 consists of the Secured Claim of the Secured Creditor (except any portion of such Secured Claim which is an Unsecured Claim pursuant to Section 506 of the Code, which is treated in Class 3).  The Secured Claim of the Secured Creditor (including all Plan Funding Advances) shall be an Allowed Secured Claim.

### Class 3—General Unsecured Claims

Class 3 consists of general Unsecured Claims (except those treated in Class 4), any portions of the Secured Claims which are Unsecured Claims pursuant to Section 506 of the Code, and any Rejection Claims (except those treated in Class 4).  This Class includes any and all Claims not more particularly described in the Plan.  Any Unsecured Claim of the Secured Creditor shall be an Allowed Unsecured Claim.

### Class 4—Insider Claims

Class 4 consists of Claims that are held by insiders of the Debtor.

### Class 5—Equity Interests

Class 5 consists of the Equity Interests in the Debtor.

## ARTICLE V
## CLASSES OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN

Class 1 is not impaired because the Plan provides that, if such Creditor does not vote in favor of the Plan, it will receive regular installment payments satisfying the requirements of Section 1129(a)(9)(D) of the Code to be paid from proceeds of Plan Funding Advances.  The Creditor holding the Allowed Secured Claim in Class 1 is conclusively presumed to have accepted the Plan.

## ARTICLE VI
## TREATMENT OF UNCLASSIFIED CLAIMS

A.    <u>Allowed Administrative Claims</u>  The holders of Allowed Administrative Claims (other than Professional Fees and U.S. Trustee Fees) shall receive, on account of such Allowed Administrative Claims, cash in the amount of such Allowed Administrative Claims as soon as

practicable after the date on which such Administrative Claim becomes an Allowed Administrative Claim or on the Effective Date, whichever is later, unless different treatment is agreed to by the holder of such Allowed Administrative Claim.  All such payments shall be made from proceeds of Plan Funding Advances.  Except as may be expressly set forth in the Plan or an order of the Bankruptcy Court, no holder of such an Administrative Claim shall be entitled to payment on account of any post-petition interest or penalties arising with respect to such Administrative Claim.  In the event that a holder of such an Allowed Administrative Claim agrees to be paid such Allowed Administrative Claim on a date later than the date for payment provided by this Section 3.1 of the Plan, its Allowed Administrative Claim shall accrue and be paid simple interest at the Federal Judgment Rate.  All motions requesting payment of Administrative Claims (other than Professional Fees and U.S. Trustee Fees) must be filed on or before the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Estate and from sharing in any Distribution under the Plan.  Professionals shall receive cash in the amount of the Professional Fees allowed and awarded by the Bankruptcy Court to such Professionals, pursuant to Sections 330(a) and 503(b) of the Code, upon the latter of (a) the Effective Date or (b) as soon as practicable after a Final Order is entered by the Bankruptcy Court approving such Professional Fees, unless any such Professional consents to other treatment.  All such payments shall be made (a) first, from any retainers held by such Professionals and (b) thereafter, from proceeds of Plan Funding Advances.  All U.S. Trustee Fees payable through the Effective Date shall be paid in full on the Effective Date.  All such payments shall be made from proceeds of Plan Funding Advances.

B.    <u>Allowed Priority Tax Claims</u>  Holders of Tax Claims that are Allowed Claims, if any, will be paid on account of such Claims either in accordance with Section 1129(a)(9)(C) of the Code or in full in cash as soon as practicable after the date on which such Tax Claim becomes an Allowed Claim or on the Effective Date, whichever is later, unless different treatment is agreed to by the holder of such Tax Claim.  Payment of Tax Claims that are Allowed

Claims shall include interest at the rate applicable under non-bankruptcy law.  All such payments shall be made from proceeds of Plan Funding Advances.

**ARTICLE VII**
**TREATMENT OF CLAIMS AND INTERESTS**

Each Class of Claims and Equity Interests shall be treated as follows:

**Class 1—Secured Claim of Governmental Unit**

The Creditor holding the Allowed Secured Claim in Class 1 will be paid (a) if such Creditor votes in favor of the Plan, in full as soon as practicable after the Effective Date from the Proceeds of the sale of the Plan Assets securing such Claim; or (b) if such Creditor does not vote in favor of the Plan, regular installment payments satisfying the requirements of Section 1129(a)(9)(D) of the Code to be paid from proceeds of Plan Funding Advances.  The Allowed Secured Claim in Class 1 is secured by Bergen Avenue.  The Creditor in Class 1 shall retain its interest in its collateral until paid in full.

**Class 2—Secured Claim of Secured Creditor**

The Secured Creditor holding the Allowed Secured Claim in Class 2 will be paid from the Proceeds of the sale of the Plan Assets securing such Claim.  The Allowed Secured Claim in Class 2 is secured by Bergen Avenue and all other Plan Assets.  The Secured Creditor shall retain its interest in its collateral until paid in full.

Except as expressly provided otherwise in the Plan, the Allowed Secured Claim in Class 2 shall continue to be governed and secured by the terms and conditions of the Secured Creditor Loan Documents, including, without limitation, applicable interest rates, late fees, default interest, and reimbursable fees and costs of the Secured Creditor.  For the avoidance of doubt, (a) nothing in the Plan shall be deemed to forgive or waive the amount of principal, interest, or other amounts due to the Secured Creditor, (b) late fees, default interest, and other fees and costs will continue to accrue and be added to the Allowed Secured Claim in Class 2 as provided in the Secured Creditor Loan Documents (up to the value of the collateral securing the Allowed Secured Claim in Class 2), and (c) nothing in the Plan shall be deemed to waive, forgive, or

suspend the Debtor's other obligations under the Secured Creditor Loan Documents (such as the duty to maintain collateral, pay property or other taxes, insure collateral, or pay over Proceeds of collateral).

**Class 3—General Unsecured Claims**

After the payment in full of Allowed Secured Claims in Classes 1 and 2, Allowed Claims in Class 3 shall receive Pro Rata Distributions up to the full amount their Allowed Claims, plus ~~simple~~ interest at the greater of (a) any contract rate of interest applicable to such Allowed Claim, plus attorney's fees and costs incurred and reimbursable pursuant any contractual agreements applicable to such Allowed Claim, or (b) the Federal Judgment Rate.  Such Pro Rata Distributions shall be made from the Proceeds of the sale of the Plan Assets.

**Class 4—Insider Claims**

After the payment in full of Allowed Secured Claims in Classes 1 and 2 and Allowed Claims in Class 3, Allowed Claims in Class 4 shall receive Pro Rata Distributions up to the full amount their Allowed Claims, plus simple interest at the Federal Judgment Rate.  Such Pro Rata Distributions shall be made from the Proceeds of the sale of the Plan Assets.

**Class 5—Equity Interests**

Holders of Equity Interests in the Debtor shall retain their Equity Interests; provided, however, that, effective as of the Effective Date, Section 9 of the Operating Agreement of the Debtor shall be deemed amended and restated in its entirety to read as provided on Exhibit "2" to the Plan, which amendment and restatement shall remain effective until such time as there is no longer any Plan Administrator appointed pursuant to the terms, conditions, and provisions of the Plan, at which time Section 9 of the Operating Agreement of the Debtor shall revert to its existing language.  After the payment in full of Allowed Secured Claims in Classes 1 and 2 and Allowed Claims in Classes 3 and 4, holders of Equity Interests in the Debtor shall receive Pro Rata Distributions of any remaining Proceeds from the sale of the Plan Assets.

**ARTICLE VIII**
**MEANS FOR EXECUTION OF THE PLAN**

The Plan shall be implemented though the appointment of the Plan Administrator.  The Plan Administrator shall manage its assigned duties and responsibilities under the Plan and administer all of the Plan Assets (including, without limitation, Bergen Avenue) and the Proceeds and, subject to the specific provisions of the Plan, shall have the authority to exercise all of the rights and powers of the Debtor.  The Plan Administrator may retain Post-Confirmation Professionals to assist the Plan Administrator in carrying out its duties and responsibilities

The Plan provides that all Leases will be rejected effective as of the Effective Date and for a process by which Bergen Avenue can be marketed for sale by the Plan Administrator to a Third Party without the non-paying affiliated and otherwise related Tenants remaining in possession of Bergen Avenue.  The Plan contemplates a marketing and sale process of approximately four (4) months from the Effective Date.

Plan Expenses will be funded though the proceeds of the Plan Funding Advances and the Proceeds of the Plan Assets.  As more fully described herein, and in the Plan, the Plan provides certain releases to the Secured Creditor in exchange for the Plan Funding Advances.  Payments on account of Allowed Claims and, thereafter, Equity Interests in the Debtor will be made through Distributions of the Proceeds of the sale of the Plan Assets.

A.      Effective Date Transactions

On (or, where appropriate, after) the Effective Date, the following actions shall occur:

(a)      The transactions contemplated under the Plan shall be consummated; and

(b)      The Plan Administrator shall assume its assigned duties and responsibilities under the Plan.

B.      Revesting of Property of Estate

Subject to the terms, conditions, and provisions of the Plan, the Debtor shall be revested with the Property of the Estate on the Effective Date of the Plan.

C.      Plan Administrator

1.      Generally

The Plan appoints a Plan Administrator pursuant to Section 1142 of the Code.  The Plan Administrator has assigned duties and responsibilities under the Plan, including, without limitation, the administration of all of the Plan Assets and the Proceeds, and, subject to the specific provisions of the Plan, shall have the authority to exercise all of the rights and powers of a debtor in possession granted pursuant to Section 1107 of the Code in connection with managing such duties and responsibilities and administering the Plan Assets and the Proceeds. In addition, the Plan Administrator shall have such other and further authority and powers as are set forth in the Plan and the Confirmation Order, including, without limitation, the authority and power of a manager of the Debtor under otherwise applicable non-bankruptcy law.  Further, the Plan Administrator, to the extent required to perform its duties and responsibilities and administer all of the Plan Assets and the Proceeds, shall be granted a power of attorney for the Debtor to execute such documents and perform such acts on behalf of the Debtor or the Estate as contemplated by the Plan.

2. <u>Duties of Plan Administrator</u>

On and after the Effective Date, the Plan Administrator shall be responsible for implementation of the Plan and the administration of the Plan Assets and the Proceeds.  In carrying out its duties and responsibilities, the Plan Administrator shall exercise prudent business judgment.  Subject to the foregoing, the Plan Administrator shall use commercially reasonable efforts to (a) maximize Proceeds from the Plan Assets in order to implement the Plan; and (b) maintain, preserve, and realize value of the Plan Assets for Creditors holding Allowed Claims and holders of the Equity Interests in the Debtor.  To the extent practicable, the Plan Administrator shall maintain books and records related to the Plan Assets, the Proceeds, and the Distributions made under the Plan pursuant to the Plan.

3. <u>Information Sharing</u>

The Plan requires Holders of Equity Interests in the Debtor shall deliver to the Plan Administrator such financial and other information concerning the business and affairs of the Plan Assets as the Plan Administrator shall reasonably request from time to time.

4.      Plan Assets – Cash and Proceeds

On or as soon as practicable after the Effective Date, the Plan Administrator shall establish Plan Accounts, and any Plan Assets consisting of cash shall be transferred to the Plan Accounts.  Thereafter, all cash Proceeds shall be deposited into Plan Accounts.

5.      Reporting Requirements

The Plan Administrator shall provide such information as the Secured Creditor may reasonably request to keep itself fully informed of the Plan Administrator's performance of its duties and responsibilities under the Plan.

6.      Plan Expenses on or after the Effective Date

Plan Expenses incurred on and after the Effective Date shall be paid from proceeds of Plan Funding Advances and/or the Proceeds of the sale of the Plan Assets.

7.      Compensation of Plan Administrator; Priority Payment

All fees and expenses of the Plan Administrator and the Post-Confirmation Professionals retained by the Plan Administrator shall be paid from the proceeds of Plan Funding Advances and/or the Proceeds of the sale of the Plan Assets, and such right to payment shall be prior and superior to any other rights, including, without limitation, rights of the holders of Claims to receive any Distribution of Proceeds of the Plan Assets.  To secure the payment of all fees and expenses of the Plan Administrator and the Post-Confirmation Professionals retained by the Plan Administrator, the Plan Administrator is granted a first priority security interest in the Proceeds of the Plan Assets, which shall (i) be deemed automatically perfected without the need for any other documents, deposit account control agreements, filings, or otherwise, and (ii) shall not be subordinate to any other lien, Claim, or interest notwithstanding any other provision of the Plan, any order, or any other documents to the contrary.  The security interest granted pursuant to this provision shall survive any termination of a Plan Administrator. The rights of any successor Plan Administrator hereunder shall be subordinate to the rights of the initial or preceding Plan Administrators.

8.    Limitation of Liability of Chapter 11 Trustee, Plan Administrator and Related Parties

The Plan exculpates and limits the liability of, and the Chapter 11 Trustee and any Chapter 11 Trustee Professional retained by the Chapter 11 Trustee under certain circumstances and for certain matters but excluding the fraud, gross negligence, or willful misconduct of any such Person. The Plan requires the Debtor to indemnify, the Plan Administrator and any director, officer, affiliate, employee, employer, attorney, professional, Post-Confirmation Professional retained by the Plan Administrator, successor, assign, agent, and representative of the Plan Administrator, under certain circumstances and for certain matters but excluding the fraud, gross negligence, or willful misconduct of any such Person.

D.    Sale of Plan Assets

On and from the Effective Date up to but excluding the Sale Deadline, with respect to the monetization of the Plan Assets, the Plan Administrator and the Post-Confirmation Professional shall market the Plan Assets for sale and use commercially reasonable efforts to cause a sale of the Plan Assets to be consummated on or before the Sale Deadline. Without limiting the generality of the forgoing, the Plan Administrator shall use commercially reasonable efforts to comply with the following sale milestones:

(a)    on or before the date that two (2) months after the Effective Date, the Plan Administrator, after consultation with the Secured Creditor, shall file and properly serve a motion (the "Sale/Bidding Procedures Motion") seeking the Bankruptcy Court's approval of (i) the sale of all or substantially all of the Plan Assets and (ii) bidding procedures for an auction and sale of all or substantially all of the Plan Assets, pursuant to Sections 363 and 365 of the Bankruptcy Code;

(b)    on or before the date that three (3) months after the Effective Date, the Plan Administrator shall hold and complete an auction in accordance with the provisions of the order of the Bankruptcy Court approving the bidding

procedures contained in the Sale/Bidding Procedures Motion and shall have selected for approval by the Bankruptcy Court, at a sale hearing to be held prior to the Sale Deadline, the highest and otherwise best bid(s) for the applicable property and assets made by any bidder(s) at the auction (each such highest and otherwise best bid, a "Winning Bid");

(c)     thereafter, the Plan Administrator shall file and properly serve a motion seeking the Bankruptcy Court's approval of the Winning Bid at a sale hearing to be held prior to the Sale Deadline; and

(d)     upon the Bankruptcy Court's approval of the Winning Bid, the Plan Administrator shall cause the sale of such Plan Assets to be consummated prior to the Sale Deadline.

A Creditor in Class 1 or 2 with an Allowed Secured Claim shall have the right to credit bid up to the amount of its Allowed Secured Claim in connection with any sale of a Plan Asset that constitutes its collateral, provided that such credit bid shall also include a cash portion in the amount necessary, if any, to pay in full (a) all Allowed Secured Claims against the same collateral having priority over such Creditor's Allowed Secured Claim and (b) any Plan Expenses directly related to the consummation of such transaction.  Sales of Plan Assets shall be made pursuant to Section 363 of the Code (including, without limitation, Sections 363(f) and (h)) and shall be brought before the Bankruptcy Court for approval by a motion initiated by the Plan Administrator.  All parties-in-interest shall retain the right to object to any such motion on any bases permitted by the Code or applicable case law.

E.     Plan Funding Advances

All Plan Funding Advances made by the Secured Creditor shall be secured by perfected liens and security interests in favor of the Secured Creditor on and in the Plan Assets and the Proceeds, subject and subordinate only to (a) existing Allowed Secured Claims against the Plan Assets and the Proceeds and (b) the liens and claims of the Plan Administrator granted pursuant to the Plan.  On the Confirmation Date, the liens and security interests securing the Plan Funding

Advances shall be deemed valid, binding, enforceable, and perfected with respect to all of the Plan Assets and the Proceeds.  Pursuant to Section 1146 of the Code, such liens and security interests, and any filing or recording of any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien, or any similar document, shall be free from any stamp, transfer, recording, or similar tax.

      F.    <u>Distributions and Payments Under the Plan</u>

      1.    <u>Distributions Generally</u>

The Plan Administrator shall make all Distributions and payments due under the Plan on the Effective Date and all other Distributions and payments under the Plan.  After the Effective Date, all cash consisting of Plan Assets and all cash Proceeds shall be deposited into Plan Accounts from which all Distributions and payments to be made by the Plan Administrator under the Plan shall be made by the Plan Administrator as follows: (a) the Plan Administrator shall pay Plan Expenses in accordance with the other terms and conditions of the Plan and may do so without further order of the Bankruptcy Court; (b) in connection with a sale of any Plan Asset approved by the Bankruptcy Court, the Plan Administrator shall first make Distributions to pay disposition expenses with respect to the sale (consisting of reasonable, documented, and customary closing costs related to any such sale and U.S. Trustee Fees attributable to such disposition (all of which shall be deemed Plan Expenses)), pursuant to the order of the Bankruptcy Court approving such sale, then shall make Distributions to pay any other unpaid Plan Expenses, then shall make Distributions to pay any Plan Funding Advances secured by such Plan Asset, and then shall make Distributions to pay Allowed Secured Claims in order of their priority on such Plan Asset to the extent of the Proceeds of such sale; (c) only after all Plan Funding Advances and all Allowed Secured Claims in Classes 1 and 2 have been paid in full, the Plan Administrator shall make Distributions to pay Allowed Claims in Class 3 on a Pro Rata basis to the extent of the Proceeds of such sale and may do so without further order of the Bankruptcy Court; (d) only after all Plan Funding Advances, all Allowed Secured Claims in Classes 1 and 2, and all Allowed Claims in Class 3 have been paid in full, the Plan Administrator

shall make Distributions to pay Allowed Claims in Class 4 on a Pro Rata basis to the extent of the Proceeds of such sale and may do so without further order of the Bankruptcy Court; and (e) only after all Plan Funding Advances, all Allowed Secured Claims in Classes 1 and 2, and all Allowed Claims in Classes 3 and 4 have been paid in full, the Plan Administrator shall make Distributions on account of Equity Interests in Class 5 on a Pro Rata basis to the extent of the Proceeds of such sale and may do so without further order of the Bankruptcy Court.

2.    Distribution Addresses

Unless a Creditor has provided the Plan Administrator with written notice of a different address, Distributions will be sent to Creditors at their addresses as set forth in their proofs of Claim filed with the Bankruptcy Court.  If no proof of Claim is filed with respect to a particular Claim, Distributions on account of such Claim will be mailed to the applicable Creditor at its address as set forth in the Schedules.  Distributions on account of Equity Interests will be mailed to the applicable holder thereof at its address as set forth in the Schedules.

3.    De Minimis Distributions

Notwithstanding any other provision of the Plan, Distributions of less than $25.00 need not be made on account of any Allowed Claim; provided that Distributions that would otherwise be made but for this provision shall carry over until the next Distribution date until the cumulative amount to which any holder of an Allowed Claim is entitled to more than $25.00, at which time the cumulative amount of such Distributions will be paid to such holder.

4.    Withholding Taxes

Pursuant to Section 346(f) of the Code, the Reorganizing Debtor and the Plan Administrator shall be entitled to deduct any applicable federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims, as appropriate.  The Reorganizing Debtor and the Plan Administrator shall be permitted to withhold a Distribution to any Creditor that has not provided information requested by the Reorganizing Debtor and the Plan Administrator for the purpose of fulfilling his or her obligations under the Plan.  The

Reorganizing Debtor and the Plan Administrator, as applicable, shall comply with all reporting obligations imposed by any governmental unit with respect to withholding and related taxes.

        5.      <u>Unclaimed Distributions</u>

Any cash Distributions that remain unclaimed or unnegotiated for one hundred twenty (120) days following Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) shall become the Property of the Estate and distributed in accordance with this Section 7.6.

        6.      <u>Disputed Claim Reserve</u>

The Plan Administrator will create a Plan Account for use as a reserve for Disputed Claims.  Each time the Plan Administrator makes a Distribution to the holders of Allowed Claims (other than Allowed Secured Claims), the Plan Administrator will deposit into a reserve the aggregate Pro Rata amount that would have been distributed to the holders of Disputed Claims.  If a Disputed Claim becomes an Allowed Claim, the Plan Administrator shall promptly distribute to the Creditor from the reserve an amount equal to all Pro Rata Distributions that would have otherwise been due to such Creditor to date under the Plan, calculated using the amount of such Creditor's Allowed Claim.  Any funds no longer needed in reserve shall be distributed in accordance with this Section 7.6.

        G.      <u>Insurance Policies</u>

To the extent any insurance policies exist in which the Debtor, the Debtor in Possession, or the Estate have an insurable or other interest in or right to make a claim, such policies shall remain available before and after the Effective Date, in addition to covering the Plan Administrator, and its Post-Confirmation Professionals, as applicable, on and after the Effective Date, to satisfy any and all Claims held by, or asserted against, the Estate, the Debtor, the Debtor in Possession, the Plan Administrator, or the Plan Administrator's Post-Confirmation Professionals.

        H.      <u>Execution and Delivery of Documents</u>

The Plan Administrator is authorized to execute and deliver, in its own name or in the name of the Debtor, such agreements, instruments, and documents as are necessary or appropriate to promote and implement the Plan or to carry out the purposes of the Plan.

I.      Objections to Claims and Estimation of Claims

Subject to Section 7.3.3 of the Plan, any objection to Disputed Claims by the Plan Administrator, the Secured Creditor, or other parties in interest must be filed before the date that is six (6) months following the Effective Date, unless such period is extended by the Bankruptcy Court for cause shown on motion filed within such original or extended objection period.  Any and all objections to Disputed Claims pending as of the Confirmation Date and not resolved by the Plan or by other order of the Bankruptcy Court are specifically reserved by the Plan and shall not be barred by any theory of *res judicata* solely by Confirmation of the Plan.

J.      Claim Bar Dates

The last day for filing proofs of Claim in the Case shall be the Bar Date fixed by the Bankruptcy Court before Confirmation of the Plan, except for Administrative Claims and Rejection Claims.   The deadline for filing and serving requests for the allowance of Administrative Claims (other than Professional Fees and U.S. Trustee Fees) shall be the Administrative Claim Bar Date.  The deadline for filing proofs of Rejection Claims in the Case shall be the Rejection Claim Bar Date.

K.      Jurisdictional Limitations on Claims re: Plan Implementation

All Claims related to the post-Confirmation conduct of the Plan Administrator or the Post-Confirmation Professionals of the Plan Administrator must be filed in and determined by the Bankruptcy Court.   No concurrent jurisdiction shall exist for the determination or enforcement of any such Claims.

L.      Court and United States Trustee Fees; Post-Confirmation Reports; Final Decree

On or before the Effective Date, all fees due to the Clerk of the Court and all U.S. Trustee Fees shall be paid in full from the proceeds of Plan Funding Advances. Quarterly U.S. Trustee Fees shall be paid by the Plan Administrator as Plan Expenses for each calendar quarter

(including, without limitation, any fraction thereof) until the Case is closed by entry of a Final

Decree, converted, or dismissed.  Upon the closing of the Case, no further U.S. Trustee Fees

shall be due, except for any calendar quarter (including, without limitation, any fraction thereof)

during which the Case may be reopened.  Following the Effective Date, the Plan Administrator

shall prepare and submit to the Bankruptcy Court and the Office of the United States Trustee,

post-Confirmation reports in the form suggested by the Office of the United States Trustee, the

purpose of which is to explain the progress made toward full administration of the confirmed

Plan.  The first post-Confirmation report shall be due within thirty (30) days following the end of

the first calendar quarter from the Effective Date and shall be filed on a quarterly basis thereafter

within thirty (30) days after the end of each calendar quarter, unless otherwise agreed to by the

Office of the United States Trustee, until the Case is closed by entry of a Final Decree,

converted, or dismissed.  The aforementioned post-Confirmation reports shall include a

statement of receipts and disbursements from the Plan Assets, the Proceeds, and the Plan

Funding Advances, with the ending cash balances of the Plan Accounts, for the entire quarter.

The post-Confirmation reports shall also include information sufficiently comprehensive to

enable the Bankruptcy Court to determine: (1) whether the Confirmation Order is final; (2)

whether deposits required by the Plan, if any, have been made and distributed; (3) whether

property to be transferred under the Plan, if any, has been transferred; (4) whether the Plan

Administrator has assumed management of the Plan Assets; (5) whether Disbursements have

commenced; (6) whether quarterly U.S. Trustee Fees due to the United States Trustee have been

paid; and (7) whether all motions, contested matters, and adversary proceedings have been

finally resolved.  A copy of each aforementioned post-Confirmation report shall be served upon

each Person on the Post-Confirmation Service List.  After the Plan and the Estate is fully

administered, the Plan Administrator shall file an application for a Final Decree, and serve the

application on the United States Trustee, together with a proposed Final Decree.  The United

States Trustee shall have fourteen (14) calendar days to object to the Bankruptcy Court's entry of

the Final Decree.

M.    Conditions Precedent; Notice of Effective Date

Confirmation of the Plan is conditioned upon entry of a Confirmation Order in form and substance acceptable to the Plan Proponent.    Upon satisfaction of such condition, on the Effective Date, the Plan Proponent shall have the power and authority to file a notice of effective date with the Bankruptcy Court.

N.    All Executory Contracts and Leases Expressly Rejected

All Executory Contracts are expressly rejected upon Confirmation of the Plan.    Among the rejected Executory Contracts are all Leases.    Rejection Claims must be filed with the Bankruptcy Court no later than the Rejection Claim Bar Date.    Failure to timely file Rejection Claims shall result in their disallowance without notice or order of the Bankruptcy Court. Allowed Rejection Claims shall be paid as Class 3 Claims or Class 4 Claims, as applicable.    By no later than the Effective Date, excluding only those Tenants under valid Leases existing as of the Effective Date who are entitled to make, and have made, an election to retain rights under Section 365(h)(1)(A)(ii) of the Bankruptcy Code and who have performed all of their obligations, including, without payment obligations, under such Leases, all Tenants and any other Third Parties in custody, possession, control, or occupancy of Bergen Avenue shall quit and surrender vacant Bergen Avenue and transfer exclusive custody, possession, and control of Bergen Avenue to the Plan Administrator, on behalf of the Debtor.    By no later than the Effective Date, while under the supervision of the Plan Administrator or its Post-Confirmation Professionals, all Tenants and other Third Parties shall remove their property, and only their property, from Bergen Avenue at their sole cost and expense (and any removal of Property of the Estate from Bergen Avenue by any such Person shall be deemed a willful violation of the Plan). After the Effective Date upon the written request of the Plan Administrator, any Tenants or other Third Parties formerly in custody, possession, control, or occupancy of Bergen Avenue shall remove any of their property that nevertheless remains at Bergen Avenue at their sole cost and expense.    If any such Person fails to do so, such property shall be deemed abandoned and, at the option of the Plan Administrator, may remain in place, be removed, become part of the Plan

Assets, or be otherwise disposed of by the Plan Administrator at the sole cost and expense of such Person. The Plan Administrator shall have the right, power, and authority to seek further relief from the Bankruptcy Court and any other court to enforce, and compel the compliance of any Person with, the provisions of this Section, including, without limitation, the right, power, and authority to bring actions to obtain judgments for possession and warrants of removal in respect of Bergen Avenue and, in connection therewith, relief from any applicable stay.

O.    Post-Confirmation Employment and Compensation of Professionals

After the Effective Date, the Plan Administrator may employ, without notice, hearing, or order of the Bankruptcy Court, Post-Confirmation Professionals. Any and all Post-Confirmation Professionals of the Plan Administrator shall be employed by the Plan Administrator, in its capacity as such, pursuant to the Plan, in its discretion, and shall not be subject to retention by the Bankruptcy Court or the retention and fee application process, provided under, *inter alia*, Sections 327 and 331 of the Code and applicable law. For periods on or after the Effective Date, the Plan Administrator shall file a monthly compensation report detailing total compensation and expense reimbursements to be paid to each of the Post-Confirmation Professionals for the prior month; provided, however, that the report shall not include detailed time records for the Post-Confirmation Professionals. Parties in interest shall have five (5) Business Days after the filing of any monthly compensation report to object to the same. Absent any such objection, all compensation and expense reimbursements owed to the Post-Confirmation Professionals as set forth on such monthly compensation report shall constitute Plan Expenses and shall be paid by the Plan Administrator in accordance with the terms and conditions of the Plan, without further notice or order of the Bankruptcy Court. In the event of any such objection, the Bankruptcy Court shall determine the compensation and expense reimbursements owed to the Post-Confirmation Professional with respect to such monthly compensation report. For purposes of any such determination, the standard for approval and payment shall be whether such request is reasonable under the circumstances.

P.    Exemption from Transfer Taxes

Pursuant to Section 1146(a) of the Code, the issuance, transfer, or exchange of notes or issuance of debt or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax, irrespective of whether the underlying property is owned by the Debtor a Third Party. All transactions specifically provided for by the Plan, including but not limited to sale(s) of Plan Assets administered by the Plan Administrator, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax.

### ARTICLE IX
### MODIFICATION OF PLAN

A.    Pre-Confirmation Modification

Pursuant to Section 1127(a) of the Code, the Plan may be modified upon motion of the Plan Proponent or corrected by the Plan Proponent before the Effective Date, without notice and a hearing and without additional disclosure pursuant to Section 1125 of the Code, provided that, after notice to the United States Trustee and all parties that have filed and served a request for special notice in the Case, the Bankruptcy Court finds that such modification does not materially or adversely affect any Creditor or any Class of Creditors.

B.    Post-Confirmation Immaterial Modification

At any time before thirty (30) calendar days after the Effective Date, the Plan Administrator, after consultation with the Secured Creditor, may seek Bankruptcy Court authorization to remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or effect such other changes, modifications, or amendments as may be necessary to carry out the purposes and intent of the Plan, provided the Bankruptcy Court finds that such changes, modifications, or amendments do not materially or adversely affect any Creditor or any Class of Creditors.

C.      Post-Confirmation Material Modification

The Plan may be modified at any time after Confirmation, pursuant to Section 1127(b) or

(e) of the Code, by the Plan Administrator, after consultation with the Secured Creditor.

**ARTICLE X**
**EFFECT OF ORDER OF CONFIRMATION**

As of the Confirmation Date, the effect of the Order of Confirmation shall be as provided

in Section 1141 of the Bankruptcy Code, and as follows:

A.      Binding Effect of Plan

The confirmed Plan is binding on every Creditor whose Claim is provided for in the Plan

and all holders of Equity Interests in the Debtor.

B.      **Injunction**

**Except as otherwise expressly provided in the Plan or in the Confirmation Order,**

**and except in connection with the enforcement of the terms of the Plan or the Confirmation**

**Order or any agreements, instruments, or documents provided for or contemplated in the**

**Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims**

**against or Equity Interests in the Debtor or the Estate that arose prior to the Effective Date**

**are permanently enjoined from: (i) commencing or continuing in any manner, directly or**

**indirectly, any action or other proceeding of any kind against the Debtor, the Estate, the**

**Plan Assets, the Proceeds, or any property of the Debtor with respect to any such Claim or**

**Equity Interest; (ii) the enforcement, attachment, collection, or recovery by any manner or**

**means, directly or indirectly, of any judgment, award, decree, or order against the Debtor,**

**the Estate, the Plan Assets, the Proceeds, or any property of the Debtor with respect to any**

**such Claim or Equity Interest; (iii) creating, perfecting, or enforcing, directly or indirectly,**

**any lien or encumbrance of any kind against the Debtor, the Estate, the Plan Assets, the**

**Proceeds, or any property of the Debtor with respect to any such Claim or Interest; (iv)**

**effecting, directly or indirectly, any setoff or recoupment of any kind against any**

**obligation due to the Debtor, the Estate, the Plan Assets, the Proceeds, or any property of**

the Debtor with respect to any such Claim or Equity Interest; and (v) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and the Confirmation Order with respect to such Claim or Equity Interest. Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Bankruptcy Case under Bankruptcy Code §§ 105 or 362, the Plan, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the entry of the Final Decree.

      C.    **<u>Release</u>**

Effective as of the Effective Date, for good and valuable consideration, including, without limitation, the Plan Funding Advances to facilitate the implementation of the Plan and the expeditious liquidation of the Plan Assets, the Debtor and the Estate shall be deemed to have unconditionally released the Secured Party and the partners and employees of Reed Smith LLP from any and all Claims, obligations, rights, suits, remedies, liabilities, crossclaims, counterclaims, debts, obligations, damages, losses, fees, defenses, remedies, setoff, recoupment or other offset rights, and other rights of disgorgement or recovery, whatsoever, including, without limitation, any Claims that could be asserted by or on behalf of the Debtor or the Estate, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (including, without limitation, claims concerning the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, and/or the property to be distributed under the Plan), except for cases of <u>gross negligence,</u> willful misconduct or fraud in each case as determined by Final Order of a court of competent jurisdiction.

**ARTICLE XI**
**<u>RETENTION OF JURISDICTION</u>**

After Confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to the fullest extent legally permissible for all purposes consistent with the Plan and the Code, which purposes include, but are not limited to (and which are in addition to all other purposes identified in the other provisions of the Plan):

A.      The classification or allowance of a Claim of any Creditor and the reexamination of Claims which have been temporarily allowed for purposes of voting and the determination of such objections as may be filed against Creditors' Claims.

B.      The determination of all questions and disputes regarding title to the Property of the Estate, and the determination of all causes of action, controversies, disputes, or conflicts, including the right to participate in any Distribution from the Estate, whether or not subject to an action pending as of the Effective Date, between the Plan Administrator and any other Person, including, but not limited to, any right of the Plan Administrator to recover assets pursuant to the provisions of the Code.

C.      The correction of any defect, curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

D.      The determination of the allowability, validity, and priority of Claims against the Estate, whether such Claims are asserted before or after the Effective Date.

E.      The modification or amendment of the Plan after Confirmation pursuant to the Bankruptcy Rules or the Code and the other terms and conditions of the Plan.

F.      The enforcement and interpretation of the terms and provisions of the Plan, the Secured Creditor Loan Documents, or the Confirmation Order.

G.      The entry of any order concluding or terminating the Case.

H.      The administration of the Case and implementation and consummation of the Plan.

# ARTICLE XII
## FEASIBILITY OF THE PLAN; THE BEST INTERESTS TEST; AND CRAMDOWN ALTERNATIVE

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Bankruptcy Court have been satisfied.  If so, the Bankruptcy Court will enter the Confirmation Order.  The Plan Proponent believes that (a) the Plan satisfies or will satisfy all of the statutory requirements of Chapter 11 of the Bankruptcy Code, (b) the Plan Proponent has complied, or will have complied, with all of the requirements of Chapter 11 of the Bankruptcy Code, and (c) the Plan has been proposed in good faith.

To confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.  This requirement is imposed by section 1129(a)(11) of the Bankruptcy Code and is referred to as the "feasibility" requirement. The Plan is premised on the liquidation of the Debtor, and the Plan Proponent believes that there will be sufficient funds available to enable the Plan Administrator to fully and timely perform all obligations described in the Plan and, therefore, that the Plan is feasible.

The Bankruptcy Code requires a bankruptcy court to determine that a plan is in the "best interests" of all holders of claims and interests that are impaired by the plan and that have not accepted the plan.  The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a bankruptcy court find that each holder of a claim or interest in an impaired class either (i) has accepted the plan or (ii) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to members of each impaired class of holders of claims and interests if the debtor were liquidated under Chapter 7, a bankruptcy court generally determines the aggregate dollar amount that would be generated from the debtor's assets if its Chapter 11 case were converted to a Chapter 7 case under the Bankruptcy Code.  This

"liquidation value" consists primarily of the proceeds from a forced sale of the debtor's assets by a Chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by, first, the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the Chapter 7 case and the Chapter 11 case. A liquidation under Chapter 7 does not affect the priority of several holders of claims to be paid first. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses and transfer taxes, all unpaid expenses incurred by the debtor in its bankruptcy case (such as compensation of attorneys, financial advisors, and restructuring consultants) that are allowed in the Chapter 7 case, litigation costs, and claims arising from the operations of the debtor during the pendency of the bankruptcy case.

After estimating the recoveries in liquidation of secured creditors and priority claimants, the bankruptcy court next determines the probable distribution to general unsecured creditors and equity security holders from the remaining available proceeds in liquidation. If such probable distribution has a value greater than the distributions to be received by such creditors and equity security holders under a debtor's plan, then such plan is not in the "best interests" of creditors and equity security holders.

The Plan Proponent believes that the Plan meets the "best interests" test of section 1129(a)(7) of the Bankruptcy Code. The Plan will effectuate an orderly liquidation of the Debtor's assets. Through an orderly liquidation effort, the probable Distributions to be received by Creditors and holders of Equity Interests in the Debtor under the Plan will have a value greater than the probable distribution to Creditors and holders of Equity Interests in the Debtor from the proceeds of a forced sale of the Debtor's assets by a Chapter 7 trustee.

Section 1129(b) of the Bankruptcy Code provides that a plan may be confirmed even if it has not been accepted by all impaired classes as long as at least one impaired class of claims has

accepted it.  A bankruptcy court may confirm a plan notwithstanding the plan's rejection (or deemed rejection) by impaired classes as long as the plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted it.  A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank.

A plan is fair and equitable as to a class of unsecured claims which rejects a plan if the plan provides (1) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (2) that the holder of any claim or interest that is junior to the claims of such rejecting class will not receive or retain on account of such junior claim or interest any property at all.  The Plan satisfies the foregoing requirement.

A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides (1) that each holder of an interest included in the rejecting class receives or retains on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (2) that the holder of any interest that is junior to the interest of such rejecting class will not receive or retain under the plan on account of such junior interest any property at all.  The Plan satisfies the foregoing requirement.

Accordingly, the Plan Proponent believes that the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE XIII
## TAX CONSEQUENCES OF PLAN

The Plan Proponent will not seek a ruling from the Internal Revenue Service prior to the Effective Date with respect to any of the tax aspects of the Plan.  EACH HOLDER OF A CLAIM AGAINST OR AN EQUITY INTEREST IN THE DEBTOR IS STRONGLY URGED

TO CONSULT WITH ITS TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN. With that qualification, certain significant Federal income tax consequences of the Plan under the Internal Revenue Code of 1986, as amended (the "Tax Code"), are described below.

It is the Plan Proponent's best estimate that Confirmation of the Plan will generally be tax neutral for Creditors. From the perspective of the Plan Proponent and of Creditors, the payments to be made under the Plan will likely have similar tax attributes and consequences as they would have had, if the Claims had been timely paid in the absence of the Case: for example, if the payment by the Debtor otherwise would have been taxable income to the Creditor when received, it will be taxable income when made under the Plan. There are two (2) circumstances in which the tax consequences may differ. First, payments may be made or received in a different tax year as a result of the deferrals provided by the bankruptcy process, which may have an effect on certain taxpayers. Second, there will likely be tax consequences to any Creditors that have already taken a bad debt deduction with respect to any obligation of the Debtor when that obligation is paid under the Plan.

The Debtor may incur significant income taxes upon the sale of the Plan Assets. The amount of tax that will be incurred is dependent on numerous factors including, without limitation, tax basis, net operating losses, administrative expenses, and accrued interest and other costs that may be deductible upon payment under the Debtor's cash basis method of computing taxable income. As a result of the Plan, it is possible that some discharge of indebtedness will arise and will reduce certain tax attributes of the Debtor.

The tax consequences of the Plan are subject to many uncertainties due to the complexity of the Plan and the lack of interpretative authority regarding certain changes in the tax law, including, without limitation, changes made to the applicable sections of the Tax Code by the Bankruptcy Tax Act of 1980. Uncertainties with regard to federal income tax consequences of the Plan also arise due to the inherent nature of estimates of value that will impact tax liability determinations.

Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, could also change the federal income tax consequences of the Plan and the transactions contemplated there under.

CREDITORS AND HOLDERS OF EQUITY INTERESTS IN THE DEBTOR ARE ADVISED TO CONSULT THEIR OWN TAX ADVISORS TO REVIEW THIS MATERIAL AND TO CONSIDER THE TAX CONSEQUENCES OF THE PLAN TO THEM, INCLUDING, WITHOUT LIMITATION, THE EFFECT OF FOREIGN, STATE, AND LOCAL TAXES.  THIS DISCLOSURE STATEMENT IS NOT INTENDED TO BE AND SHOULD NOT BE CONSTRUED AS LEGAL OR TAX ADVICE TO ANY CREDITOR.

IRS Circular 230 Notice:  To ensure compliance with IRS Circular 230, holders of Claims are hereby notified that: (a) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing of the transactions or matters addressed herein; and (c) holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.

### ARTICLE XIV
### LIQUIDATION ALTERNATIVE

The obvious alternatives to confirmation of the Plan are relief from the automatic stay under § 362 of the Bankruptcy Code being granted to the Secured Creditor, dismissal of the Case, or conversion of this Case to a case under Chapter 7 of the Bankruptcy Code and a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

Relief from the automatic stay under § 362 of the Bankruptcy Code being granted to the Secured Creditor or dismissal of the Case would result in a sheriff's sale (a foreclosure sale) of Bergen Avenue while the Tenants remain in possession of Bergen Avenue, without any meaningful marketing of Bergen Avenue prior to such sale, and subject to applicable fees, costs, poundage, and taxes, and the priorities of distributions to Creditors and holders of Equity

Interests in the Debtor would be established pursuant to applicable non-bankruptcy law.  In such a scenario, there will be no equality of distribution and many interested parties would not receive any Distribution.

A liquidation pursuant to Chapter 7 of the Bankruptcy Code would result in an immediate sale of Bergen Avenue while the Tenants remain in possession of Bergen Avenue and without any meaningful marketing of Bergen Avenue prior to such sale because there is no reason to believe that the Secured Creditor would agree to make the Plan Funding Advances available in a Chapter 7 case and there is no available cash within the Estate to fund administrative claims and expenses associated with carrying and marketing Bergen Avenue.  Further, such a sale would be subject to transfer tax and all of the fees, costs, and commissions associated with a Chapter 7 case, and the priorities of distributions to Creditors and holders of Equity Interests in the Debtor would be established pursuant to Chapter 7 of the Bankruptcy Code.

The Plan Proponent estimates that Bergen Avenue will be worth more than Allowed Secured Claims in a marketed, transfer tax free sale to a Third Party pursuant to the Plan, if the purported Leases of the non-paying affiliated and otherwise related Tenants are rejected and terminated and such non-paying affiliated and otherwise related Tenants are no longer in possession of Bergen Avenue.  Such a sale would allow for a Distribution to any Creditors holding Allowed Unsecured Claims and, thereafter, to holders of Equity Interests in the Debtor. Accordingly, the Plan provides that all Leases will be rejected effective as of the Effective Date and for a process by which Bergen Avenue can be marketed for sale by the Plan Administrator to a Third Party without the non-paying affiliated and otherwise related Tenants remaining in possession of Bergen Avenue.  The Plan contemplates a marketing and sale process of approximately four (4) months from the Effective Date.  Thus, the Plan provides for an orderly liquation of Bergen Avenue following the Effective Date that should realize a higher value for Bergen Avenue than the alternatives.

The Plan Proponent believes that any alternative plan could only be to refinance Bergen Avenue and would not be confirmable by reason of, among other things, failing to be feasible.

The Debtor has made numerous – and not surprisingly – failed attempts to refinance the Bergen Avenue over the course of approximately two years, while the non-paying Tenants remain in possession of Bergen Avenue under their purported Leases.  Even if confirmable, the Plan Proponent believes that any alternative plan would not result in as favorable of treatment of Claims and Equity Interests as proposed under the Plan by reason of a refinance inherently generating less cash proceeds than a sale.

**ARTICLE XV**
**MISCELLANEOUS**

A.    <u>Interpretation</u>

To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim or Equity Interest in the Debtor, or any other matter, the terms of the Plan shall control.

B.    <u>Applicable Law</u>

The Plan is to be governed by and construed under the Code and the laws of the State of New Jersey as they may be applicable.

C.    <u>Severability</u>

If any provision in the Plan is determined to be unenforceable by the Bankruptcy Court, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan; and the Bankruptcy Court shall have the power to alter and interpret such provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the provision, and such provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

D.    <u>Implementation Orders</u>

At any time, the Bankruptcy Court may make such orders or give such direction as may be appropriate under Section 1142 of the Code.

E.       Rules of Construction

The rules of construction provided in Section 102 of the Code shall apply to the words and phrases of the Plan.  Headings and captions are utilized in the Plan for convenient reference only and shall not constitute a part of the Plan for any other purpose.

## CONCLUSION

The Plan Proponent believes that the Plan of Liquidation is substantially in the best interest of Creditors and the Estate and urges those Creditors entitled to vote on the Plan to vote to accept the Plan.

Respectfully submitted,

**BEB BERGEN AVE, LLC**,
a New York limited liability company

By: s/Keyvan Ghaytanchi    
Name:  Keyvan Ghaytanchi
Title:   Authorized Signatory

Dated: December 7, 2023

Exhibit "A"


See attached.

| Summary report:<br>**Litera Compare for Word 11.3.0.46 Document comparison done on<br>1/18/2024 11:35:59 AM** | |
|---|---|
| **Style name:** ReedSmith Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://us-digitalfile.reedsmith.com/US_ACTIVE/175903274/4 | |
| **Modified DMS:** iw://us-digitalfile.reedsmith.com/US_ACTIVE/175903274/6 | |
| **Changes:** | |
| Add | 18 |
| Delete | 15 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 2 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 35 |