UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Derek J. Baker, Esquire (1998001688)
Brian M. Schenker, Esquire
Lauren S. Zabel, Esquire (012132010)
REED SMITH LLP
506 Carnegie Venter, Suite 300
Princeton, New Jersey 08540
Telephone:  609-987-0050
Fax:  609-951-0824
dbaker@reedsmith.com
bschenker@reedsmith.com

*Counsel for BEB Bergen Ave, LLC*

Charles M. Forman, Esq. (CMF-8937)
Michael E. Holt, Esq. (MEH-8735)
Forman Holt
365 West Passaic Street
Suite 400
Rochelle Park, NJ 07662
Telephone: (201) 857-7110
Facsimile:  (201) 665-6650

*Counsel for Supor Properties Bergen Avenue LLC*

Daniel M. Eliades, Esq. (DME-6203)
David S. Catuogno, Esq. (DSC-1397)
Caitlin C. Conklin, Esq. (CCC-5117)
K&L Gates LLP
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile:  (973) 848-4001

*Counsel for Joseph Supor III*

| | |
|---|---|
| In re:<br><br>SUPOR PROPERTIES BERGEN AVENUE LLC<br><br>Debtor | Chapter 11<br><br>Case No. 23-15758-SLM |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
(I) APPROVING THE THIRD AMENDED DISCLOSURE STATEMENT IN SUPPORT
OF FOR THIRD AMENDED PLAN OF REORGANIZATION OR LIQUIDATION AND
(II) CONFIRMING THE THIRD AMENDED PLAN OF REORGANIZATION OR
LIQUIDATION**

The relief set forth on the following pages, numbered two (2) through twenty-eight (28), is hereby **ORDERED**.

On January 29, 204, BEB Bergen Ave, LLC, a New York limited liability company, the secured creditor ("BEB Bergen"), Supor Properties Bergen Avenue LLC, a Delaware limited liability company, the debtor out-of-possession in the above-captioned and numbered case ("Debtor"), and Joseph Supor, III ("Mr. Supor", collectively with Debtor and BEB Bergen, the "Plan Proponents") filed the *Third Amended Joint Plan of Reorganization or Liquidation* (as may be amended, modified, or supplemented, the "Plan") [Dkt. No. 175], attached hereto as **Exhibit 1** (as supplemented, amended, or modified, the "Plan") and on January 31, 2024, the Plan Proponents filed the *Third Amended Disclosure Statement in Support of Proposed Third Amended Joint Plan of Reorganization or Liquidation* [Dkt. No. 179] (as supplemented, amended, or modified, the "Disclosure Statement").[1] On February 6, 2024, the Court conducted a hearing (the "Joint Hearing") to consider final approval of the Disclosure Statement and confirmation of the Plan.

Based upon the Court's review of, among other things, the (i) Plan; (ii) Service Affidavit; (iii) the Ballots; (iv) any exhibits admitted, testimony given, and any other evidence presented or proffered at the Joint Hearing; (v) representations and arguments of counsel at the Joint Hearing; (vi) the docket of this Case; and (vii) other relevant factors affecting this Case, it is hereby

**FOUND AND DETERMINED THAT:**

### Prior Plans and Disclosure Statements

On November 6, 2023, BEB Bergen filed a proposed plan of liquidation [Dkt. No. 72] and, on November 9, 2023, filed a proposed disclosure statement [Dkt. No. 77]. On December 5, 2023, the Court entered an *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Confirmation Hearing Notice;*

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan or Disclosure Statement, as applicable.

*and (IV) Granting Related Relief* [Dkt. No. 112] (the "Solicitation Order").  The *Certificate of Service* relating to the solicitation materials was filed with this Court on December 11, 2023 [Dkt. No. 120] (the "Service Affidavit").

On December 7, 2023, BEB Bergen filed a First Amended Plan and First Amended Disclosure Statement [Dkt. Nos. 114 & 115].

On January 8, 2024, (i) J. Supor Realty LLC; (ii) J. Supor & Son Trucking and Rigging; (iii) Supor Crane & Rigging LLC; (iv) Supor Trucking LLC; (v) Joseph Supor III, as Trustee of Marital Trust; (vi) Joseph Supor III; and (vii) Joseph Supor III, as Trustee of Marital Trust under the Last Will and Testament of Joseph Supor, Jr. Dated September 13, 2002, as Amended by First Codicil Dated June 14, 2007, submitted ballots by email and overnight mail rejecting the First Amended Plan.

On January 9, 2024, an objection was filed by Debtor and Mr. Supor to the Final Approval of the First Amended Disclosure Statement and Confirmation of First Amended Plan [the "Plan Objection"; Dkt. No. 133].

On January 18, 2024, BEB Bergen, *inter alia*, filed (i) a Second Amended Plan and Second Amended Disclosure Statement [Dkt. Nos. 140 & 141, respectively]; (ii) a Certification as to the Tabulation of Ballots on Secured Creditor's Second Amended Plan (the "Initial Voting Certification") [Dkt. No. 142]; and (iii) a Motion for the Temporary Allowance of the Secured Creditor's claim for Voting Purposes pursuant to Fed. R. Bankr. P 3018 (the "Motion for Temporary Allowance") [Dkt. No. 145].

On January 19, 2024, the Debtor and Mr. Supor filed a Motion to Allow Proof of Interest fled by Joseph Supor III for Voting Purposes and Objecting to the Certification regarding Voting and the Tabulation of Ballots (the "Motion to Allow POI") (Dkt. No. 152).

On January 27, 2024, the Debtor and Mr. Supor filed a Joint Objection to the Motion for Temporary Allowance. [Dkt. No. 172]. On January 27, 2024, BEB Bergen filed an Objection to the Motion to Allow POI. [Dkt. No. 173].

On January 21, 2024, the Debtor and Mr. Supor filed a Joint Combined Plan and Disclosure Statement (the "Joint Combined Plan and DS") [Dkt No. 154] as well as a Motion seeking approval thereof [Dkt. No. 155]. On January 26, 2024, the Court entered an Order, *inter alia,* Approving the Joint Disclosure Statement of Debtor and Joseph Supor III on an Interim Basis ("Order Re Interim Approval of Combined Plan") [Dkt. No. 171].

On January 29, 2024, BEB Bergen withdrew the Motion for Temporary Allowance [Dkt. No. 176], and Mr. Supor withdrew the Motion to Allow Proof of Interest [Dkt. No. 177].

On January 30, 2024, the Debtor and Mr. Supor withdrew the Motion to Object to the Claim of BEB Bergen. [Dkt. No. 178].

The Plan supersedes the Plan of Liquidation [Dkt. No. 72], the First Amended Plan [Dkt. No. 114], the Second Amended Plan [Dkt. No. 140], and the Joint Combined Plan and DS [Dkt No. 154], and all objections thereto, are hereby deemed withdrawn.

As reflected on the record at the Confirmation Hearing, the ballots of (i) J. Supor Realty LLC; (ii) J. Supor & Son Trucking and Rigging; (iii) Supor Crane & Rigging LLC; (iv) Supor Trucking LLC; (v) Joseph Supor III, as Trustee of Marital Trust; (vi) Joseph Supor III; and (vii) Joseph Supor III, as Trustee of Marital Trust under the Last Will and Testament of Joseph Supor, Jr. Dated September 13, 2002, as Amended by First Codicil Dated June 14, 2007, rejecting the First Amended Plan are hereby deemed withdrawn and each of those parties are hereby deemed to have voted in favor of the Plan.

## Jurisdiction and Venue

(A)    <u>Jurisdiction; Venue; Core Proceeding</u>.  The Court has jurisdiction over this Case pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The Debtor was and is qualified to be a debtor under section 109 of the Bankruptcy Code.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Disclosure Statement and Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed.

## Notice, Solicitation, and Acceptance

(B)    <u>Service of Solicitation Materials and Notices</u>.  As evidenced by certificates of service filed on the docket of this Case, all appropriate pleadings, notices, and Ballots were transmitted, mailed, and served to the extent required by the Solicitation Order and Bankruptcy Rule 3017(d).  BEB Bergen mailed, by first class mail: (a)  a cover letter describing the contents of the Solicitation Package, (b) the Disclosure Statement together with the Plan and all exhibits, (c) a copy of the Solicitation Order; (d) the notice of the Joint Hearing (the "<u>Confirmation Hearing Notice</u>"); and an appropriate Ballot to the holders of Claims or Equity Interest in Classes 2 through 5 (each, a "<u>Solicitation Package</u>," and collectively, "<u>Solicitation Packages</u>").  BEB Bergen also mailed, by first class mail: (a) the Disclosure Statement, together with the Plan and all other exhibits annexed thereto, (b) the Solicitation Order (c) the Confirmation Hearing Notice, and (d) the Notice of Non-Voting Status and Confirmation Hearing Notice to the holder of Claim in Class 1 (the "<u>Non-Voting Package</u>"). In addition, BEB Bergen mailed, by first class mail, to the Office of the U.S. Trustee, governmental units having an interest in this Case, parties on the creditor matrix for the Case and those parties requesting notice pursuant to Bankruptcy Rule 2002 that did not otherwise receive a Solicitation Package, (a) the Disclosure Statement, together with the Plan and all other exhibits annexed thereto, (b) the Interim Approval and Procedures Order, and (c) the

Confirmation Hearing Notice (each, an "Information Package" and collectively, the "Information

Packages").

(C)    Adequate Notice of Joint Hearing.    In accordance with Bankruptcy Rules 2002,

3017, 3018, 3019, 9006, 9007, and 9014, and the Solicitation Order, BEB Bergen provided

adequate notice of (a) the time for filing objections to final approval of the Disclosure Statement

and confirmation of the Plan, and (b) the Joint Hearing to all holders of Claims and Equity Interests

and other parties in interest entitled to receive such notice under the Bankruptcy Code and

Bankruptcy Rules.  No other or further notice of the Joint Hearing or confirmation of the Plan is

necessary or required.

## Compliance with Section 1125 of the Bankruptcy Code

(D)    Final Approval of Disclosure Statement.      On a final basis, the Third Amended

Disclosure Statement complies with the requirements of the Bankruptcy Code, Bankruptcy Rules,

and Local Bankruptcy Rules and contains "adequate information" as such term is defined in

section 1125(a) of the Bankruptcy Code.

## Compliance with Section 1129 of the Bankruptcy Code

(E)    Burden of Proof.    The Court has accepted into evidence the *Declaration of Keyvan

Ghaytanchi in Support of BEB Bergen Ave, LLC's Memorandum of Law in Support of

(I) Approving the Second Amended Disclosure Statement on a Final Basis and (II) Confirming the

Second Amended Plan of Liquidation.* [Dkt. No. 143] (the "Ghaytanchi Declaration") and the

*Declaration Of Keyvan Ghaytanchi In Support Of (i) Approval Of Third Amended Disclosure

Statement On A Final Basis, And (ii) Confirming The Third Amended Plan Of Reorganization or

Liquidation* [Dkt. No. 180] (the "2d Ghaytanchi Declaration"), the *Declaration Of Joseph Supor,

III In Support Of Order (I) Approving The Third Amended Disclosure Statement On A Final Basis,

And (II) Confirming The Third Amended Plan Of Reorganization Or Liquidation* [Dkt. No. 181]

- 7 -

and the Ballots as summarized on the Initial Voting Certification.  The Plan Proponents have

satisfied their burden of proof.  A plan proponent has the burden to prove the requirements of

confirmation by a preponderance of the evidence.  Here, the Plan Proponents have satisfied their

burden of proof with respect to confirmation of the Plan.

(F)      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan

complies with the applicable provisions of the Bankruptcy Code regarding classification of claims

and interests (11 U.S.C. § 1122) and the contents of a plan (11 U.S.C. § 1123), thereby satisfying

section 1129(a)(1) of the Bankruptcy Code.  These provisions are discussed in the following

paragraphs.

(G)      The Plan complies with the classification requirements set forth in section 1122 of

the Bankruptcy Code, which provides that "a plan may place a claim or interest in a particular

class only if such claim or interest is substantially similar to the other claims or interests of such

class."  11 U.S.C. § 1122(a).  This section does not require that claims or interests within a

particular class be identical.  A plan proponent has flexibility in classifying claims, so long as the

proponent has some reasonable basis for the classification or the creditor agrees to it.  Under the

Plan, the Claims or Equity Interests within each Class are substantially similar to the other Claims

or Equity Interests within that Class.  The Plan classifies Claims and Equity Interests as follows:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims of Governmental Units | Unimpaired | Not entitled to Vote |
| 2 | Secured Claims of Secured Creditor | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Insider Claims | Impaired | Entitled to Vote |
| 5 | Equity Interests | Impaired | Entitled to Vote |

(H)      Valid business, legal, and factual reasons exist for the separate classification of each

of these Classes of Claims and Equity Interests, and there is no unfair discrimination or

gerrymandering between or among the holders of Claims and Equity Interests.  Classifying and

treating the Secured Claims of Governmental United and the Secured Claims of Secured Creditor

differently is reasonable and appropriate under the circumstances of this Case.  All Claims and

Equity Interests within each Class under the Plan are substantially similar and are afforded equal

and reasonable treatment, or the claimant has agreed to the classification.  Accordingly, the

classification of Claims and Equity Interests under the Plan satisfies the requirements of section

1122 of the Bankruptcy Code.

(I)      The Plan Complies with section 1123 of the Bankruptcy Code.  In accordance with

section 1123(a) of the Bankruptcy Code, the Plan: (1) designates Classes of Claims and Equity

Interests, other than Claims of a kind specified in sections 507(a)(2), 507(a)(3), or 507(a)(8) of the

Bankruptcy Code; (2) specifies Classes of Claims that are Unimpaired under the Plan; (3) specifies

the treatment of Classes of Claims and Equity Interests that are Impaired under the Plan; (4)

provides the same treatment for each Claim or Interest of a particular Class, unless the holder of a

particular Claim or Interest of a particular Class agrees to less favorable treatment of its respective

Claim or Interest; (5) provides for adequate means for the Plan's implementation; (6) does not

provide for the Debtor to issue securities to any person; and (7) contains only provisions that are

consistent with the interests of holders of Claims and Equity Interests and with public policy with

respect to the Plan Administrator's liquidation of the Plan Assets.  The relief provided in the Plan

is fair and necessary for the orderly implementation of the Plan and the administration of the Estate.

Therefore, the Plan satisfies the requirements of sections 1123(a) and (b) of the Bankruptcy Code.

(J)      Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  In accordance

with section 1129(a)(2) of the Bankruptcy Code, the Plan Proponents have complied with the

applicable provisions of the Bankruptcy Code.  The Debtor is a proper debtor under section 109

of the Bankruptcy Code.  The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code (including §§ 1122, 1123, 1124, 1125, 1126, and 1128), the Bankruptcy Rules (including Bankruptcy Rules 3017, 3018, and 3019), and the Solicitation Order in transmitting the Plan, the Disclosure Statement, the Ballots, and all related documents and notices, and in soliciting and tabulating votes on the Plan.

(K)     Votes to accept or reject the Plan were solicited by BEB Bergen and its attorneys and agents after the Court approved the adequacy of the Disclosure Statement, on a conditional basis, pursuant to section 1125(a) of the Bankruptcy Code.

(L)     As noted in the Initial Voting Certification, BEB Bergen and it respective attorneys and agents have solicited and tabulated votes on the Plan and have participated in the activities described in the section 1125 of the Bankruptcy Code fairly, in good faith, within the meaning of section 1125 of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Solicitation Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable laws, rules, and regulations and are entitled to the protections afforded by section 1125 of the Bankruptcy Code.  As stated on the record of the Joint Hearing and the 2d Ghaytanchi Declaration, the Ballots submitted by BEB Bergen are in favor of the Plan and the Ballots submitted by of  (i) J. Supor Realty LLC; (ii) J. Supor & Son Trucking and Rigging; (iii) Supor Crane & Rigging LLC; (iv) Supor Trucking LLC; (v) Joseph Supor III, as Trustee of Marital Trust; (vi) Joseph Supor III; and (vii) Joseph Supor III, as Trustee of Marital Trust under the Last Will and Testament of Joseph Supor, Jr. Dated September 13, 2002, as Amended by First Codicil Dated June 14, 2007, are changed to reflect a vote in favor of the Plan.

(M)     The Plan Proponents and their respective advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore,

are not, and on account of such distributions will not be, liable at any time of the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan, so long as such Distributions are made consistent with and pursuant to the terms of the Plan.

(N)    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  To be confirmed, a plan must have been "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  A plan is proposed in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.  The requirement of good faith "must be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan."

(O)    The Plan is proposed in good faith and not by any means forbidden by law.  The Plan allows holders of Allowed Claims to realize the highest possible recovery under the circumstances from proceeds of the sale of the Plan Assets.  In accordance with section 1129(a)(3) of the Bankruptcy Code, the Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan and the solicitation of votes to accept or reject the Plan.

(P)    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  In accordance with section 1129(a)(4) of the Bankruptcy Code, all payments and distributions made or to be made for services or for costs and expenses in, or in connection with, this Case, or in connection with the Plan and incident to this Case, are subject to the approval of, the Court as reasonable, unless otherwise ordered by the Court.

(Q)   Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Plan Proponents have complied with section 1129(a)(5) of the Bankruptcy Code. The Plan's proposed modifications of the Debtor's Operating Agreement [Dkt 149-1] as part of the Plan are consistent with applicable law and are approved. The persons that must be identified pursuant to section 1129(a)(5) of the Bankruptcy Code have been identified in the Plan. The appointment of such persons is consistent with the interests of creditors and with public policy.

(R)   No Rate Change (11 U.S.C. § 1129(a)(6)). In accordance with section 1129(a)(6) of the Bankruptcy Code, the Debtor is not subject to any governmental regulations of any rates.

(S)   Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). Section 1129(a)(7) of the Bankruptcy Code, the "best interest of creditors test," requires that, with respect to each impaired class, each holder of a claim or interest in the class:

    i.   Has accepted the plan; or
    ii.  Will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

(T)   The evidence presented by the Plan Proponent at the Joint Hearing, and other evidence admitted at the Joint Hearing establishes that the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied by the Plan. In accordance with section 1129(a)(7) of the Bankruptcy Code, with respect to Classes of Impaired Claims or Impaired Equity Interests, each holder of a Claim or Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

(U)      <u>Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  The Holder of the Claim in Class 1 is Unimpaired and is conclusively presumed to have accepted the Plan. Holders of Claims in Classes 2, 3 and 4 and Equity Interests in Class 5 are Impaired.  As demonstrated by the Initial Voting Certification and the Ballots and the votes confirmed on the record of the Joint Hearing, Classes 2, 3, 4 and 5 have voted to accept the Plan.

(V)      <u>Treatment of Administrative, Priority, and Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The Plan's treatment of Claims of a kind specified in sections 507(a)(1) through (8) of the Bankruptcy Code satisfies the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

(W)      <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  In accordance with section 1129(a)(10) of the Bankruptcy Code, at least one Class of Claims that is Impaired under the Plan has voted to accept the Plan, without including acceptances of the Plan by any insider.

(X)      <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  Confirmation of the Plan is not likely to be followed by the liquidation of the Debtor other than as set forth in the Plan itself. Thus, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

(Y)      <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  In accordance with the Bankruptcy Code, all fees payable on or before the Effective Date (i) pursuant to 28 U.S.C. § 1930, together with interest, if any, pursuant to 31 U.S.C. § 3717, and (ii) to the United States Trustee, shall be paid by the Plan Administrator on or before the Effective Date.  All such fees payable after the Effective Date shall be paid by Plan Administrator until the Cases is closed, converted, or dismissed.

(Z)      <u>Other Provisions of 11 U.S.C. § 1129(a)</u>.  The provisions of 11 U.S.C. §§ 1129(a)(13), (a)(14), (a)(15), and (a)(16) are not applicable to the Debtor.

(AA)   Only One Plan (11 U.S.C. § 1129(c)).  The Debtor proposed a plan and disclosure statement, and that the disclosure statement proposed by the Debtor was denied [Dkt. No. 113]. The Plan is the only remaining chapter 11 plan that has been approved for solicitation and scheduled for confirmation proceedings in this Case.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

(BB)   Principal Purpose (11 U.S.C. § 1129(d)).  No person, including, but not limited to, the U.S. Securities and Exchange Commission (the "SEC") or any other governmental authority, has requested that the Court deny confirmation on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of section 5 of the 1933 Act.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the 1933 Act.

(CC)   Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C. § 1146(a)).  In accordance with section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security, and the making or delivery of any instrument of transfer pursuant to the Plan, including pursuant to an Exit Transaction, shall not be subject to any stamp or similar tax, including document recording tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar recordation fee or governmental assessment, irrespective of whether the underlying property is owned by the Debtor or a Third Party. All transactions specifically provided for by the Plan, including but not limited to sale(s) of Plan Assets administered by the Plan or Debtor, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax.

**Authorizations and Transfers Pursuant to the Plan**

(DD)  <u>Settlement and Releases</u>.  Except as otherwise provided in the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved pursuant to the Plan.

(EE)  <u>Legal Binding Effect</u>.  The provisions of the Plan will bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they have voted to accept the Plan.

(FF)  <u>Exculpation</u>.  The exculpation provisions of the Plan are an integral part thereof and represent a valid exercise of the Plan Proponents' respective business judgment.  Pursuing any claims against the Trustee, or the Trustee's Professionals, is not in the best interests of the Debtor's Estate and various constituencies, as the costs involved likely would outweigh any potential benefit from pursuing such claims if any such claims existed.  Accordingly, the compromises and settlements embodied in the exculpation provisions described in Article VII of the Plan are reasonable and appropriate.

(GG)  <u>Revesting of Property</u>.  Subject to the terms, conditions, and provisions of the Plan, the Debtor shall be revested with the Property of the Estate on the Effective Date of the Plan, including but not limited to all claims and causes of action of the Debtor, Estate and/or Reorganized Debtor against third parties, known or unknown, except those claims specifically released under the Plan.

(HH)  <u>Rejection of Executory Contracts and Unexpired Leases</u>.  The rejection of executory contracts and unexpired leases pursuant to the Plan and this Order is (i) in the best

interests of the Debtor, the Estate, and holders of Claims and Equity Interests, and (ii) necessary for the implementation of the Plan.

(II)    Compliance with Bankruptcy Rule 3016.  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and the Plan Proponents that submitted it and filed it are appropriately identified.  The filing of the Disclosure Statement with the clerk of this Court satisfies Bankruptcy Rule 3016(b).

### Miscellaneous Provisions

(JJ)    Best Interests of Persons.  Confirmation of the Plan is in the best interests of the Debtor and its Estate.

(KK)    Findings of Fact and Conclusions of Law on the Record.  All findings of fact and conclusions of law announced by this Court on the record in connection with confirmation of the Plan or otherwise at the Joint Hearing are incorporated herein by reference.  To the extent that any of the findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

(1)    Final Approval of Disclosure Statement.  The Disclosure Statement is approved on a final basis as containing "adequate information" under section 1125 of the Bankruptcy Code.

(2)    Confirmation of Plan.  The Plan is approved and confirmed under section 1129 of the Bankruptcy Code.  The Plan is valid and enforceable pursuant to its terms, and the terms of the Plan are incorporated by reference into and are an integral part of this Order.

(3)    Objections Overruled.  All objections that have not been withdrawn, waived, or settled are overruled on the merits.

(4)    Authority.  The Plan Administrator is authorized to execute and deliver, in its own name or in the name of the Debtor, such agreements, instruments, and documents as are necessary

or appropriate to promote and implement the Plan or to carry out the purposes of the Plan. Mr. Supor is authorized to execute and deliver, in his own name as holder of the Equity Interests or in the name of the Debtor, such agreements, instruments, and documents as are necessary or appropriate to promote and implement an Exit Transaction as set forth in the Plan.

(5)    <u>Settlements</u>. Each settlement embodied in the Plan and this Order between the Plan Proponent and holders of Claims and Equity Interests is approved in all respects.

(6)    <u>Plan Classification Controlling</u>.    The terms of the Plan shall govern the classification of Claims and Equity Interests for purposes of the Distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; and (b) shall not be binding except for voting purposes.

(7)    <u>Conveyance of Property; Abandonment of Remaining Assets</u>. The property of the Debtor's Estate will re-vest in the Debtor on or after the Effective Date, subject to the terms of the Plan and this Order.

(8)    <u>Authorization to Take Actions Contemplated by Plan</u>. The Plan Administrator is authorized to take the actions contemplated by the Plan, and this Order. Mr. Supor is authorized to execute and deliver, in his own name as holder of the Equity Interests or in the name of the Debtor, such agreements, instruments, and documents as are necessary or appropriate to promote and implement an Exit Transaction as set forth in the Plan.

(9)    <u>Rejection of Executory Contracts and Unexpired Leases</u>. All Executory Contracts are expressly rejected upon Confirmation of this Plan. Among the rejected Executory Contracts are all Leases, other than the Specified Leases (as defined in the Plan). The Specified Leases may only be assumed by the Debtor in connection with the consummation of a Qualifying Exit

Transaction on or before the Exit Transaction Deadline, effective only as of the Exit Transaction

Closing Date. In the absence of such an assumption, any rejection of the Specified Leases is set

forth in Section 8.2 of the Plan. Rejection Claims must be filed with the Bankruptcy Court no later

than the Rejection Claim Bar Date. Failure to timely file Rejection Claims shall result in their

disallowance without notice or order of the Bankruptcy Court. Allowed Rejection Claims shall be

paid as Class 3 Claims or Class 4 Claims, as applicable.

(10)    <u>Transfer of Custody, Possession and Control of Bergen Avenue</u>.  The transfer of

custody, possession, and control of Bergen Avenue shall be governed by the Plan and the Consent

Order.

(11)    <u>Legal Binding Effect</u>.  The provisions of the Plan shall bind all holders of Claims

and Equity Interests and their respective successors and assigns, whether or not they accept they

Plan.

(12)    **<u>Release of BEB Bergen</u>**.  **Effective as of the Effective Date, for good and**

**valuable consideration, including, without limitation, the agreement in favor of the Supor**

**Entities set forth in Section 8.2 and the Plan Funding Advances to facilitate the**

**implementation of the Plan and the expeditious liquidation of the Plan Assets, the Debtor**

**and the Estate shall be deemed to have unconditionally released BEB Bergen and the**

**partners and employees of Reed Smith LLP from any and all Claims, obligations, rights,**

**suits, remedies, liabilities, crossclaims, counterclaims, debts, obligations, damages, losses,**

**fees, defenses, remedies, setoff, recoupment or other offset rights, and other rights of**

**disgorgement or recovery, whatsoever, including, without limitation, any Claims that could**

**be asserted by or on behalf of the Debtor or the Estate, whether known or unknown, foreseen**

**or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor or**

the Estate would have been legally entitled to assert in their own right, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (including, without limitation, claims concerning the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, and/or the property to be distributed under the Plan), except for cases of gross negligence, willful misconduct, or fraud in each case as determined by Final Order of a court of competent jurisdiction.

(13)    **Release of Joseph Supor III**. Effective as of the Exit Transaction Closing Date, for good and valuable consideration, including, without limitation, procuring the Qualifying Bid resulting in the consummation of the Exit Transaction, the Debtor and the Estate shall be deemed to have unconditionally released Joseph Supor, III and the partners and employees of K&L Gates LLP and Forman Holt from any and all Claims, obligations, rights, suits, remedies, liabilities, crossclaims, counterclaims, debts, obligations, damages, losses, fees, defenses, remedies, setoff, recoupment or other offset rights, and other rights of disgorgement or recovery, whatsoever, including, without limitation, any Claims that could be asserted by or on behalf of the Debtor or the Estate, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (including, without limitation, claims concerning the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, and/or the property to be distributed under the

Plan), except for cases of gross negligence, willful misconduct, or fraud in each case as determined by Final Order of a court of competent jurisdiction.

(14) **Mutual Release Upon Repayment in Full of Allowed Claim of Secured Creditor.**

(a) **Release of BEB Bergen.** Effective as of the date on which the Allowed Claim of BEB Bergen has been paid in full in immediately available funds, for good and valuable consideration, Mr. Supor and the Marital Trust shall be deemed to have unconditionally released BEB Bergen and the partners and employees of Reed Smith LLP from any and all Claims, obligations, rights, suits, remedies, liabilities, crossclaims, counterclaims, debts, obligations, damages, losses, fees, defenses, remedies, setoff, recoupment or other offset rights, and other rights of disgorgement or recovery, whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that Mr. Supor and/or the Marital Trust would have been legally entitled to assert in their own right, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before such date (including, without limitation, claims concerning the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, and/or the property to be distributed under the Plan).

(b) **Release of Mr. Supor and Marital Trust.** Effective as of the date on which the Allowed Claim of BEB Bergen has been paid in full in immediately available funds, for good and valuable consideration, BEB Bergen shall be deemed to have unconditionally released Joseph Supor, III, the Marital Trust, and the partners and employees of K&L Gates LLP and Forman Holt from any and all Claims, obligations, rights, suits, remedies, liabilities,

**crossclaims, counterclaims, debts, obligations, damages, losses, fees, defenses, remedies, setoff, recoupment or other offset rights, and other rights of disgorgement or recovery, whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that Secured Creditor would have been legally entitled to assert in their own right, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before such date (including, without limitation, claims concerning the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, and/or the property to be distributed under the Plan).**

(15)    Discharge of Debtor.  Section 11.6 of the Plan is hereby deleted and replaced in its entirety by the following:

11.6    Discharge of Debtor

(1)    Except for distributions and obligations specifically created or affirmed under the Plan, or as otherwise provided in the Confirmation Order, effective as of the Exit Transaction Closing Date, the Confirmation Order shall operate as a discharge under Section 1141(d)(1) of the Bankruptcy Code of, and Claims against, the Debtor that arose at any time before the Confirmation Date, including, but not limited to, all principal and interest, whether accrued before, on or after the Petition Date, regardless of whether (i) a Proof of Claim in respect of such Claim has been filed or deemed filed, (ii) such Claim has been Allowed pursuant to Section 502 of the Bankruptcy Court, or (iii) the holder of such Claim has voted on this Plan or has voted to reject this Plan. Without limiting the generality of the foregoing, effective as of the Exit Transaction Closing Date, the Debtor shall be discharged from any debt that arose before the Confirmation Date and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code and shall have all

of the benefits and protections set forth in Section 1141(d)(i) of the Bankruptcy Code. Except as otherwise specifically provided herein, nothing in this Plan shall be deemed to waive, limit or restrict in any manner the discharge granted upon Confirmation of this Plan pursuant to Section 1141 of the Bankruptcy Code.

(2)     The discharge of the Debtor as provided in the Plan shall not diminish or impair the enforceability of any insurance policies that may cover claims against any Debtor or any other Person. The discharge of the Debtor as provided in this Plan shall not diminish or impair any claims arising after the Confirmation Date with respect to the non-monetary obligations of the Debtor under any insurance policy. The insurers under all policies to which the Debtor is a party will continue to be responsible for insurance claims, including, without limitation, future claims, in accordance with the terms of the insurance policies and the requirements of state and other applicable law, notwithstanding the effect of the discharge under this Plan on any requirement under the insurance policies that the Debtor first satisfy any monetary obligations arising prior to the Confirmation Date.

(3)     The rights afforded in the Plan and the treatment of all Claimants shall be in exchange for and in complete discharge of all Claims of any nature whatsoever, including any interest accrued thereon, which arose prior to the Confirmation Date, against the Debtor and the Estate, or its assets, properties, or interests in property. Except as otherwise provided in the Plan, effective as of the Exit Transaction Closing Date, all Claims and demands against the Debtor and the Estate shall be discharged in full.

(4)     Effective as of the Exit Transaction Closing Date, the Debtor shall not be responsible for any obligations of the Debtor or the Bankruptcy Estate except those expressly assumed by the Debtor pursuant to the Plan.

(5)      Effective as of the Exit Transaction Closing Date, all Persons and Claimants shall be precluded and forever barred from asserting against the Debtor or its assets, properties, or interests in property any other or further Claims or demands based upon any act or omission, transaction or other activity, event or occurrence of any kind or nature that occurred prior the Confirmation Date, whether or not the facts of the legal basis therefore were known or existed prior to the Confirmation Date, except as expressly provided in the Plan.

With respect to any debts discharged by operation of law under Bankruptcy Code §§ 524(a) and 1141, effective as of the Exit Transaction Closing Date, the discharge of the Debtor operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the Debtor, whether or not the discharge of such debt is waived; provided, however, that any obligations of the Debtor under this Plan are not so discharged.

(6)      On and after the Exit Transaction Closing Date, the Debtor and its representatives shall be fully and finally discharged of any liability or obligation on any Claim that is not an Allowed Claim and any order creating a Claim that is not an Allowed Claim that is not a Final Order as of the Exit Transaction Closing Date solely because of a Claimant's right to move for reconsideration of such order pursuant to Bankruptcy Code § 502 or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Exit Transaction Closing Date.

(16)      <u>Exemptions from Certain Taxes</u>. Pursuant to Section 1146(a) of the Code, the issuance, transfer, or exchange of notes or issuance of debt or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including pursuant to an Exit Transaction, shall not be subject to any stamp, real estate transfer,

mortgage recording, sales, or other similar tax, irrespective of whether the underlying property is owned by the Debtor a Third Party.  All transactions specifically provided for by the Plan, including but not limited to sale(s) of Plan Assets administered by the Plan Administrator, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax.

(17)    <u>Injunctions and Automatic Stay</u>.  Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in this Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court entered as of the date of this Order (the "<u>Confirmation Date</u>") (excluding any injunctions or stays contained in the Plan or this Order) shall remain in full force and effect through and including the Effective Date.  All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

(18)    <u>Cancellation of Securities</u>.  Unless otherwise provided for in the Plan, on the Effective Date, all promissory notes, stock, instruments, indentures, bonds, agreements, certificates or other documents evidencing, giving rise to, or governing any Interest in, or debt obligation of, the Debtor shall be deemed canceled and shall represent only the right, if any, to participate in the Distributions contemplated by the Plan.  Except as otherwise provided in the Plan, the obligations of the Debtor thereunder or in any way related thereto shall be fully released, terminated, extinguished, and discharged and, with respect to the Equity Interests in the Debtor, retired and hereafter cease to exist, in each case without further notice to or order of the Court, act, or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any person.

(19)     <u>Post-Confirmation Conversion/Dismissal</u>. If there is a default in performing under the Plan, a Creditor or party in interest, including the Unites States Trustee, may bring a motion to convert or dismiss the Case under section 1112(b) of the Code after the Plan is confirmed.  If the Court orders the Case converted to chapter 7 after the Plan is confirmed, then all property that had been Property of the Estate in the chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, including any claims held by the Debtor and the Estate that are released pursuant to this Order, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Court.

**<u>Miscellaneous Provisions</u>**

(20)     <u>Reservation of Rights</u>.  Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained herein or the taking of any action by the Plan Proponents with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Plan Proponents of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

(21)     <u>Notice of Effective Date</u>.  On or before five (5) Business Days after the occurrence of the Effective Date, the Plan Proponents shall file on the docket of the Cases a notice of the entry of this Order, the occurrence of the Effective Date, and such other matters as the Plan Proponent deems appropriate or as may be ordered by the Court.

(22)     <u>Waiver or Estoppel</u>.  Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including, without limitation, the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as a Secured Claim, or not subordinated, by virtue of an agreement made with a Plan Proponent or its counsel, or any other person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with this Court prior to the Confirmation Date.

(23)    <u>References to Plan Provisions</u>.  Any failure specifically to include or reference any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be confirmed in its entirety (except as otherwise modified in this Order).

(24)    <u>Reversal</u>.  If any or all of the provisions of this Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Plan Proponents' receipt of written notice of any such order.  Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

(25)    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

(26)    <u>Modification of the Plan Prior to Substantial Consummation</u>.  After the Confirmation Date and prior to the Effective Date, the Plan Proponents may, under section 1127(b) of the Bankruptcy Code, (i) amend the Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim; (ii) institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Order; and (iii) amend the Plan as may be necessary to carry out the purposes and effects of the Plan so long as such amendment does not materially or adversely affect the

treatment of holders of Claims or Equity Interests under the Plan; provided, however, that prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or order of the Court.

(27)    Conflicts between Plan and Order.  If there is any conflict between the Plan and this Order, the terms of this Order shall control.

(28)    Severability of Plan Provisions.  Each term and provision of the Plan, as may be altered or interpreted, is valid and enforceable pursuant to its terms.

(29)    Post-Confirmation Status Reports.   The Plan Administrator shall, as applicable, file reports on the Debtor's disbursements with the Court on a quarterly basis, within twenty-one (21) days after the conclusion of each such period until the entry of a final decree closing the Case. Any such reports shall be prepared consistent with (both in terms of content and format) the applicable Bankruptcy Court and United States Trustee's Guidelines for such matters.

(30)    Closing Report and Final Decree.  Upon the Estate being fully administered, the Plan Administrator shall, pursuant to Local Bankruptcy Rule 3022-1, promptly file and serve a closing report and request entry of a final decree pursuant to Bankruptcy Rule 3022.

(31)    Retention of Jurisdiction.  This Court's retention of jurisdiction as set forth in Section 12.1 of the Plan and the standing of the Plan Administrator to invoke that jurisdiction as set forth in Section 12.1 of the Plan is approved.  Such retention of jurisdiction does not affect the finality of this Order.

(32)    Governing Law. Except to the extent that the Bankruptcy Code or federal law is applicable, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles or conflicts of law thereof.

(33)    <u>Non-severable and Mutually Dependent</u>.  The provisions of this Order are non-severable and mutually dependent.

(34)    <u>Recordable Form</u>.  This Order shall be, and hereby is, declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable governmental authority for filing and recording purposes without further or additional orders, certifications, or other supporting documents.  Further, the Court authorizes the Trustee and/or Plan Administrator to file a memorandum of this Order in any appropriate filing or recording office as evidence of the matters contained herein.

(35)    <u>Final Order</u>.  This Order is a Final Order, and the period in which an appeal must be filed shall commence upon entry of this Order.

(36)    <u>Waiver of Stay</u>. The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

## **Exhibit 1**

(Confirmed Plan)